Justice Sotqmayor
delivered the opinion of the Court.
The Fair Debt Collection Practices Act (FDCPA or Act) imposes civil liability on “debt collector[s]” for certain prohibited debt collection practices. Section 813(c) of the Act, 15 U. S. C. § 1692k(c), provides that a debt collector is not liable in an action brought under the Act if she can show “the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.” This case pre *577 sents the question whether the “bona fide error” defense in § 1692k(c) applies to a violation resulting from a debt collector’s mistaken interpretation of the legal requirements of the FDCPA. We conclude it does not.
I
A
Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U. S. C. § 1692(e). The Act regulates interactions between consumer debtors and “debt collector[s],” defined to include any person who “regularly collects ... debts owed or due or asserted to be owed or due another.” §§1692a(5), (6). Among other things, the Act prohibits debt collectors from making false representations as to a debt’s character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an “unusual time or place” likely to be inconvenient to the consumer, § 1692e(a)(l); or using obscene or profane language or violence or the threat thereof, §§1692d(l), (2). See generally §§ 1692b-1692j; Heintz v. Jenkins, 514 U. S. 291, 292-293 (1995).
The Act is enforced through administrative action and private lawsuits. With some exceptions not relevant here, violations of the FDCPA are deemed to be unfair or deceptive acts or practices under the Federal Trade Commission Act (FTC Act), 15 U. S. C. §41 et seq, and are enforced by the Federal Trade Commission (FTC). See § 16921. As a result, a debt collector who acts with “actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is [prohibited under the FDCPA]” is subject to civil penalties of up to $16,000 per day. §§ 45(m)(l)(A), (C); 74 Fed. Reg. 858 (2009) (amending 16 CFR§ 1.98(d)).
*578 The FDCPA also provides that “any debt collector who fails to comply with any provision of th[e] [Act] with respect to any person is liable to such person.” 15 U. S. C. § 1692k(a). Successful plaintiffs are entitled to “actual damage [s],” plus costs and “a reasonable attorney’s fee as determined by the court.” Ibid. A court may also award “additional damages,” subject to a statutory cap of $1,000 for individual actions, or, for class actions, “the lesser of $500,000 or 1 per centum of the net worth of the debt collector.” § 1692k(a)(2). In awarding additional damages, the court must consider “the frequency and persistence of [the debt collector’s] noncompliance,” “the nature of such noncompliance,” and “the extent to which such noncompliance was intentional.” § 1692k(b).
The Act contains two exceptions to provisions imposing liability on debt collectors. Section 1692k(c), at issue here, provides that
“[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.”
The Act also states that none of its provisions imposing liability shall apply to “any act done or omitted in good faith in conformity with any advisory opinion of the [FTC].” § 1692k(e).
B
Respondents in this case are a law firm, Carlisle, McNellie, Rini, Kramer & Ulrich, L. P. A., and one of its attorneys, Adrienne S. Foster (collectively Carlisle). In April 2006, Carlisle filed a complaint in Ohio state court on behalf of a client, Countrywide Home Loans, Inc. Carlisle sought foreclosure of a mortgage held by Countrywide in real property owned by petitioner Karen L. Jerman. The complaint in- *579 eluded a “Notice,” later served on Jerman, stating that the mortgage debt would be assumed to be valid unless Jerman disputed it in writing. Jerman’s lawyer sent a letter disputing the debt, and Carlisle sought verification from Countrywide. When Countrywide acknowledged that Jerman had, in fact, already paid the debt in full, Carlisle withdrew the foreclosure lawsuit.
Jerman then filed her own lawsuit seeking class certification and damages under the FDCPA, contending that Car-lisle violated §1692g by stating that her debt would be assumed valid unless she disputed it in writing.[1] While acknowledging a division of authority on the question, the District Court held that Carlisle had violated § 1692g by requiring Jerman to dispute the debt in writing. 464 F. Supp. 2d 720, 722-725 (ND Ohio 2006).[2] The court ultimately granted summary judgment to Carlisle, however, concluding that § 1692k(e) shielded it from liability because the violation was not intentional, resulted from a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. 502 F. Supp. 2d 686, 695-697 (2007). The Court of Appeals for the Sixth Circuit affirmed. 538 F. 3d 469 (2008). Acknowledging that the *580 Courts of Appeals are divided regarding the scope of the bona fide error defense, and that the “majority view is that the defense is available for clerical and factual errors only,” the Sixth Circuit nonetheless held that § 1692k(c) extends to “mistakes of law.” Id., at 473-476 (internal quotation marks omitted). The Court of Appeals found “nothing unusual” about attorney debt collectors maintaining “procedures” within the meaning of § 1692k(c) to avoid mistakes of law. Id., at 476. Noting that a parallel bona fide error defense in the Truth in Lending Act (TILA), 15 U. S. C. § 1640(c), expressly excludes legal errors, the court observed that Congress has amended the FDCPA several times since 1977 without excluding mistakes of law from § 1692k(c). 538 F. 3d, at 476.[3]
We granted certiorari to resolve the conflict of authority as to the scope of the FDCPA’s bona fide error defense,[4] 557 *581 U. S. 933 (2009), and now reverse the judgment of the Sixth Circuit.
II
A
The parties disagree about whether a “violation” resulting from a debt collector’s misinterpretation of the legal requirements of the FDCPA can ever be “not intentional” under § 1692k(c). Jerman contends that when a debt collector intentionally commits the act giving rise to the violation (here, sending a notice that included the “in writing” language), a misunderstanding about what the Act requires cannot render the violation “not intentional,” given the general rule that mistake or ignorance of law is no defense. Carlisle and the dissent, in contrast, argue that nothing in the statutory text excludes legal errors from the category of “bona fide error[s]” covered by § 1692k(c) and note that the Act refers not to an unintentional “act” but rather an unintentional “violation.” The latter term, they contend, evinces Congress’ intent to impose liability only when a party knows its conduct is unlawful. Carlisle urges us, therefore, to read § 1692k(e) to encompass “all types of error,” including mistakes of law. Brief for Respondents 7.
We decline to adopt the expansive reading of § 1692k(e) that Carlisle proposes. We have long recognized the “common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.” Barlow v. United States, 7 Pet. 404, 411 (1833) (opinion for the Court by Story, J.); see also Cheek v. United States, 498 U. S. 192, 199 (1991) (“The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution *582 is deeply rooted in the American legal system”).[5] Our law is therefore no stranger to the possibility that an act may be “intentional” for purposes of civil liability, even if the actor *583 lacked actual knowledge that her conduct violated the law. In Kolstad v. American Dental Assn., 527 U. S. 526 (1999), for instance, we addressed a provision of the Civil Rights Act of 1991 authorizing compensatory and punitive damages for “intentional discrimination,” 42 U. S. C. § 1981a, but limiting punitive damages to conduct undertaken “with malice or with reckless indifference to the federally protected rights of an aggrieved individual,” § 1981a(b)(l). We observed that in some circumstances “intentional discrimination” could occur without giving rise to punitive damages liability, such as where an employer is “unaware of the relevant federal prohibition” or acts with the “distinct belief that its discrimination is lawful.” 527 U. S., at 536-537. See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 110 (5th ed. 1984) (“[I]f one intentionally interferes with the interests of others, he is often subject to liability notwithstanding the invasion was made under an erroneous belief as to some ... legal matter that would have justified the conduct”); Restatement (Second) of Torts § 164, and Comment e (1963-1964) (intentional tort of trespass can be committed despite the actor’s mistaken belief that she has a legal right to enter the property).[6]
Likely for this reason, when Congress has intended to provide a mistake-of-law defense to civil liability, it has often done so more explicitly than here. In particular, the FTC Act’s administrative-penalty provisions — which, as noted above, Congress expressly incorporated into the FDCPA— *584 apply only when a debt collector acts with “actual knowledge or knowledge fairly implied on the basis of objective circumstances” that its action was “prohibited by [the FDCPA].” 15 U. S. C. §§ 45(m)(l)(A), (C). Given the absence of similar language in §1692k(c), it is a fair inference that Congress chose to permit injured consumers to recover actual damages, costs, fees, and modest statutory damages for “intentional” conduct, including violations resulting from mistaken interpretation of the FDCPA, while reserving the more onerous penalties of the FTC Act for debt collectors whose intentional actions also reflected “knowledge fairly implied on the basis of objective circumstances” that the conduct was prohibited. Cf. 29 U. S. C. §260 (authorizing courts to reduce liquidated damages under the Portal-to-Portal Act of 1947 if an employer demonstrates that “the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938”); 17 U. S. C. § 1203(c)(5)(A) (provision of Digital Millennium Copyright Act authorizing court to reduce damages where “the violator was not aware and had no reason to believe that its acts constituted a violation”).
Congress also did not confine liability under the FDCPA to “willful” violations, a term more often understood in the civil context to excuse mistakes of law. See, e. g., Trans World Airlines, Inc. v. Thurston, 469 U. S. 111, 125-126 (1985) (civil damages for “willful violations” of Age Discrimination in Employment Act of 1967 require a showing that the employer “knew or showed reckless disregard for the matter of whether its conduct was prohibited” (internal quotation marks omitted)); cf. Safeco Ins. Co. of America v. Burr, 551 U. S. 47, 57 (2007) (although “ 'willfully’ ” is a “ ‘word of many meanings’ ” dependent on context, “we have generally taken it [when used as a statutory condition of civil liability] to cover not only knowing violations of a standard, but reckless ones as well” (quoting Bryan v. United States, *585 524 U. S. 184, 191 (1998))). For this reason, the dissent missteps in relying on Thurston and McLaughlin v. Richland Shoe Co., 486 U. S. 128, 133 (1988), as both cases involved the statutory phrase “willful violation.” Post, at 613-614.
The dissent reaches a contrary conclusion based on the interaction of the words “violation” and “not intentional” in § 1692k(c). Post, at 613. But even in the criminal context, cf. n. 6, swpra, reference to a “knowing” or “intentional” “violation” or cognate terms has not necessarily implied a defense for legal errors. See Bryan, 524 U. S., at 192 (“ ‘[T]he knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law’ ” (quoting Boyce Motor Lines, Inc. v. United States, 342 U. S. 337, 345 (1952) (Jackson, J., dissenting))); United States v. International Minerals & Chemical Corp., 402 U. S. 558, 559, 563 (1971) (statute imposing criminal liability on those who “ ‘knowingly violatje]’ ” regulations governing transportation of corrosive chemicals does not require “proof of [the defendant’s] knowledge of the law”); Ellis v. United States, 206 U. S. 246, 255, 257 (1907) (rejecting argument that criminal penalty applicable to those who “intentionally violate” a statute “requires knowledge of the law”).
The dissent advances a novel interpretative rule under which the combination of a “mens rea requirement” and the word “‘violation’” (as opposed to language specifying “the conduct giving rise to the violation”) creates a mistake-of-law defense. Post, at 613. Such a rule would be remarkable in its breadth, applicable to the many scores of civil and criminal provisions throughout the U. S. Code that employ such a combination of terms. The dissent’s theory draws no distinction between “knowing,” “intentional,” or “willful” and would abandon the care we have traditionally taken to construe such words in their particular statutory context. See, e. g., Safeco, 551 U. S., at 57. More fundamentally, the dissent’s categorical rule is at odds with precedents such as Bryan, 524 U. S., at 192, and International Minerals, 402 *586 U. S., at 559, 563, in which we rejected a mistake-of-law defense when a statute imposed liability for a “knowing violation” or on those who “knowingly violat[ej” the law.[7]
The dissent posits that the word “intentional,” in the civil context, requires a higher showing of mens rea than “willful” and thus that it should be easier to avoid liability for intentional, rather than willful, violations. Post, at 615. Even if the dissent is correct that the phrase “intentional violation,” standing alone in a civil liability statute, might be read to excuse mistakes of law, the FDCPA juxtaposes the term “not intentional” “violation” in §1692k(c) with the more specific language of § 45(m)(l)(A), which refers to “actual knowledge or knowledge fairly implied on the basis of objective circumstances” that particular conduct was unlawful. The dissent’s reading gives short shrift to that textual distinction.
*587 We draw additional support for the conclusion that bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA, from the requirement that a debt collector maintain “procedures reasonably adapted to avoid any such error.” The dictionary defines “procedure” as “a series of steps followed in a regular orderly definite way.” Webster’s Third New International Dictionary 1807 (1976). In that light, the statutory phrase is more naturally read to apply to processes that have mechanical or other such “regular orderly” steps to avoid mistakes — for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day, § 1692c(a)(l), or make false representations as to the amount of a debt, § 1692e(2). The dissent, like the Court of Appeals, finds nothing unusual in attorney debt collectors’ maintaining procedures to avoid legal error. Post, at 628; 538 F. 3d, at 476. We do not dispute that some entities may maintain procedures to avoid legal errors. But legal reasoning is not a mechanical or strictly linear process. For this reason, we find force in the suggestion by the Government (as amicus curiae supporting Jerman) that the broad statutory requirement of procedures reasonably designed to avoid “any” bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes. Such procedures are more likely to avoid error than those applicable to legal reasoning, particularly in the context of a comprehensive and complex federal statute such as the FDCPA that imposes open-ended prohibitions on, inter alia, “false, deceptive,” § 1692e, or “unfair” practices, § 1692f. See Brief for United States as Amicus Curiae 16-18.
Even if the text of § 1692k(e), read in isolation, leaves room for doubt, the context and history of the FDCPA provide further reinforcement for construing that provision not to shield violations resulting from misinterpretations of the requirements of the Act. See Dada v. Mukasey, 554 U. S. 1, 16 (2008) (“In reading a statute we must not look merely to *588 a particular clause, but consider in connection with it the whole statute” (internal quotation marks omitted)). As described above, Congress included in the FDCPA not only the bona fide error defense but also a separate protection from liability for “any act done or omitted in good faith in conformity with any advisory opinion of the [FTC].” § 1692k(e). In our view, the Court of Appeals' reading is at odds with the role Congress evidently contemplated for the FTC in resolving ambiguities in the Act. Debt collectors would rarely need to consult the FTC if § 1692k(c) were read to offer immunity for good-faith reliance on advice from private counsel. Indeed, debt collectors might have an affirmative incentive not to seek an advisory opinion to resolve ambiguity in the law, as receipt of such advice would prevent them from claiming good-faith immunity for violations and would potentially trigger civil penalties for knowing violations under the FTC Act.[8] More importantly, the existence of a separate provision that, by its plain terms, is more obviously tailored to the concern at issue (excusing civil liability when the Act's prohibitions are uncertain) weighs against stretching the language of the bona Me error defense to accommodate Carlisle’s expansive reading.[9]
Any remaining doubt about the proper interpretation of § 1692k(c) is dispelled by evidence of the meaning attached *589 to the language Congress copied into the FDCPA’s bona fide error defense from a parallel provision in an existing statute. TILA, 82 Stat. 146, was the first of several statutes collectively known as the Consumer Credit Protection Act (CCPA) that now include the FDCPA. As enacted in 1968, § 130(e) of TILA provided an affirmative defense that was in pertinent part identical to the provision Congress later enacted into the FDCPA: “A creditor may not be held liable in any action brought under [TILA] if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.” 82 Stat. 157 (codified at 15 U.S. C. § 1640(e)).
During the 9-year period between the enactment of TILA and passage of the FDCPA, the three Federal Courts of Appeals to consider the question interpreted TILA’s bona fide error defense as referring to clerical errors; no such court interpreted TILA to extend to violations resulting from a mistaken legal interpretation of that Act.[10] We have often *590 observed that when “judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its ... judicial interpretations as well.” Bragdon v. Abbott, 524 U. S. 624, 645 (1998); see also Rowe v. New Hampshire Motor Transp. Assn., 552 U. S. 364, 370 (2008). While the interpretations of three Federal Courts of Appeals may not have “settled” the meaning of TILA’s bona fide error defense, there is no reason to suppose that Congress disagreed with those interpretations when it enacted the FDCPA Congress copied verbatim the pertinent portions of TILA’s bona fide error defense into the FDCPA. Compare 15 U.S.C. § 1640(c) (1976 ed.) with § 813(c), 91 Stat. 881. This close textual correspondence supports an inference that Congress understood the statutory formula it chose for the FDCPA consistent with Federal Court of Appeals interpretations of TILA.[11]
*591 Carlisle and the dissent urge reliance, consistent with the approach taken by the Court of Appeals, on a 1980 amendment to TILA that added the following sentence to that statute’s bona fide error defense: “Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person’s obligations under [TILA] is not a bona fide error.” See Truth in Lending Simplification and Reform Act, § 615, 94 Stat. 181. The absence of a corresponding amendment to the FDCPA, Carlisle reasons, is evidence of Congress’ intent to give a more expansive seope to the FDCPA defense. For several reasons, we decline to give the 1980 TILA amendment such interpretative weight. For one, it is not obvious that the amendment changed the scope of TILA’s bona fide error defense in a way material to our analysis, given the uniform interpretations of three Courts of Appeals holding that the TILA defense does not extend to mistakes of law.[12] *592 (Contrary to the dissent’s suggestion, post, at 681, this reading does not render the 1980 amendment surplusage. Congress may simply have intended to codify existing judicial interpretations to remove any potential for doubt in jurisdictions where courts had not yet addressed the issue.) It is also unclear why Congress would have intended the FDCPA’s defense to be broader than the one in TILA, which presents at least as significant a set of concerns about imposing liability for uncertain legal obligations. See, e. g., Ford Motor Credit Co. v. Milhollin, 444 U. S. 555, 566 (1980) (TILA is “‘highly technical’”). Our reluctance to give controlling weight to the TILA amendment in construing the FDCPA is reinforced *593 by the fact that Congress has not expressly included mistakes of law in any of the numerous bona fide error defenses, worded in pertinent part identically to § 1692k(c), elsewhere in the U. S. Code. Compare, e. g., 12 U. S. C. § 4010(c)(2) (bona fide error defense in Expedited Funds Availability Act expressly excluding “an error of legal judgment with respect to [obligations under that Act]”) with 15 U. S. C. §§ 1693m(e), 1693h(c) (bona fide error provisions in the Electronic Fund Transfer Act that are silent as to errors of legal judgment).[13] Although Carlisle points out that Congress has amended the FDCPA on several occasions without expressly restricting the scope of §1692k(e), that does not suggest Congress viewed the statute as having the expansive reading Carlisle advances, particularly as not until recently had a Court of Appeals interpreted the bona fide error defense to include a violation of the FDCPA resulting from a mistake of law. See Johnson v. Riddle, 305 F. 3d 1107, 1121-1124, and nn. 14-15 (CA10 2002).
Carlisle’s reliance on Heintz, 514 U. S. 291, is also unavailing. We held in that case that the FDCPA’s definition of “debt collector” includes lawyers who regularly, through litigation, attempt to collect consumer debts. Id., at 292. We *594 addressed a concern raised by the petitioner (as here, a lawyer collecting a debt on behalf of a client) that our reading would automatically render liable “any litigating lawyer who brought, and then lost, a claim against a debtor,” on the ground that § 1692e(5) prohibits a debt collector from making any “‘threat to take action that cannot legally be taken.'” Id., at 295. We expressed skepticism that § 1692e(5) itself demanded such a result. But even assuming the correctness of petitioner’s reading of § 1692e(5), we suggested that the availability of the bona fide error defense meant that the prospect of liability for litigating lawyers was not “so absurd” as to warrant implying a categorical exemption unsupported by the statutory text. Ibid. We had no occasion in Heintz to address the overall scope of the bona fide error defense. Our discussion of § 1692e(5) did not depend on the premise that a misinterpretation of the requirements of the Act would fall under the bona fide error defense. In the mine-run lawsuit, a lawyer is at least as likely to be unsuccessful because of factual deficiencies as opposed to legal error. Lawyers can, of course, invoke §1692k(c) for violations resulting from qualifying factual errors.
Carlisle's remaining arguments do not change our view of § 1692k(c). Carlisle perceives an inconsistency between our reading of the term “intentional” in that provision and the instruction in § 1692k(b) that a court look to whether “noncompliance was intentional” in assessing statutory additional damages. But assuming §1692k(b) encompasses errors of law, we see no conflict, only congruence, in reading the Act to permit a court to adjust statutory damages for a good-faith misinterpretation of law, even where a debt collector is not entitled to the categorical protection of the bona fide error defense. Carlisle is also concerned that under our reading, § 1692k(c) would be unavailable to a debt collector who violates a provision of the FDCPA applying to acts taken with particular intent because in such instances the relevant act *595 would not be unintentional. See, e. g., § 1692d(5) (prohibiting a debt collector from “[c]ausing a telephone to ring . . . continuously with intent to annoy, abuse, or harass”). Including mistakes as to the scope of such a prohibition, Car-lisle urges, would ensure that § 1692k(c) applied throughout the FDCPA. We see no reason, however, why the bona fide error defense must cover every provision of the Act.
The parties and amici make arguments concerning the legislative history that we address for the sake of completeness. Carlisle points to a sentence in a Senate Committee Report stating that “[a] debt collector has no liability ... if he violates the act in any manner, including with regard to the act’s coverage, when such violation is unintentional and occurred despite procedures designed to avoid such violations.” S. Rep. No. 95-382, p. 5 (1977); see also post, at 609-611 (opinion of Scalia, J.) (discussing report). But by its own terms, the quoted sentence does not unambiguously support Carlisle’s reading. Even if a bona fide mistake “with regard to the act’s coverage” could be read in isolation to contemplate a mistake of law, that reading does not exclude mistakes of fact. A mistake “with regard to the act’s coverage” may derive wholly from a debt collector’s factually mistaken belief, for example, that a particular debt arose out of a non-consumer transaction and was therefore not “covered” by the Act. There is no reason to read this passing statement in the Senate Report as contemplating an exemption for legal error that is the product of an attorney’s erroneous interpretation of the FDCPA — particularly when attorneys were excluded from the Act’s definition of “debt collector” until 1986. 100 Stat. 768. Moreover, the reference to “any manner” of violation is expressly qualified by the requirements that the violation be “unintentional” and occur despite maintenance of appropriate procedures. In any event, we need not choose between these possible readings of the Senate Report, as the legislative record taken as a whole does not lend *596 strong support to Carlisle’s view.[14] We therefore decline to give controlling weight to this isolated passage.
B
Carlisle, its amici, and the dissent raise the additional concern that our reading will have unworkable practical consequences for debt collecting lawyers. See, e. g., Brief for Respondents 40-41,45-48; NARCA Brief 4-16; post, at 615-624. Carlisle claims the FDCPA’s private enforcement provisions have fostered a “ ‘cottage industry* ” of professional plaintiffs *597 who sue debt collectors for trivial violations of the Act. See Brief for Respondents 40-41. If debt collecting attorneys can be held personally liable for their reasonable misinterpretations of the requirements of the Act, Carlisle and its amici foresee a flood of lawsuits against creditors’ lawyers by plaintiffs (and their attorneys) seeking damages and attorney’s fees. The threat of such liability, in the dissent’s view, creates an irreconcilable conflict between an attorney’s personal financial interest and her ethical obligation of zealous advocacy on behalf of a client: An attorney uncertain about what the FDCPA requires must choose between, on the one hand, exposing herself to liability and, on the other, resolving the legal ambiguity against her client’s interest or advising the client to settle — even where there is substantial legal authority for a position favoring the client. Post, at 621-624.[15]
We do not believe our holding today portends such grave consequences. For one, the FDCPA contains several provisions that expressly guard against abusive lawsuits, thereby mitigating the financial risk to creditors’ attorneys. When an alleged violation is trivial, the “actual damage[s]” sustained, § 1692k(a)(l), will likely be de minimis or even zero. *598 The Act sets a cap on “additional” damages, § 1692k(a)(2), and vests courts with discretion to adjust such damages where a violation is based on a good-faith error, § 1692k(b). One amicus suggests that attorney’s fees may shape financial incentives even where actual and statutory damages are modest. NARCA Brief 11. The statute does contemplate an award of costs and “a reasonable attorney’s fee as determined by the court” in the case of “any successful action to enforce the foregoing liability.” § 1692k(a)(3). But courts have discretion in calculating reasonable attorney’s fees under this statute,[16] and §1692k(a)(3) authorizes courts to *599 award attorney’s fees to the defendant if a plaintiff’s suit “was brought in bad faith and for the purpose of harassment.”
Lawyers also have recourse to the affirmative defense in §1692k(c). Not every uncertainty presented in litigation stems from interpretation of the requirements of the Act itself; lawyers may invoke the bona fide error defense, for instance, where a violation results from a qualifying factual error. Jerman and the Government suggest that lawyers can entirely avoid the risk of misinterpreting the Act by obtaining an advisory opinion from the FTC under § 1692k(e). Carlisle fairly observes that the FTC has not frequently issued such opinions, and that the average processing time may present practical difficulties. Indeed, the Government informed us at oral argument that the FTC has issued only four opinions in the past decade (in response to seven requests), and the FTC’s response time has typically been three or four months. Tr. of Oral Arg. 27-28, 30. Without disregarding the possibility that the FTC advisory opinion process might be useful in some cases, evidence of present administrative practice makes us reluctant to place significant weight on § 1692k(e) as a practical remedy for the concerns Carlisle has identified.
We are unpersuaded by what seems an implicit premise of Carlisle’s arguments: that the bona fide error defense is a debt collector’s sole recourse to avoid potential liability. We addressed a similar argument in Heintz, in which the petitioner urged that certain of the Act’s substantive provisions would generate “‘anomalies’” if the term “debt collector” was read to include litigating lawyers. 514 U. S., at 295. Among other things, the petitioner in Heintz contended that §1692c(e)’s bar on further communication with a consumer who notifies a debt collector that she is refusing to pay the debt would prohibit a lawyer from filing a lawsuit to collect the debt. Id., at 296-297. We agreed it would be “odd” if the Act interfered in this way with “an ordinary debt- *600 collecting lawsuit” but suggested § 1692c(c) did not demand such a reading in light of several exceptions in the text of that provision itself. Ibid. As in Heintz, we need not authoritatively interpret the Act’s conduct-regulating provisions to observe that those provisions should not be assumed to compel absurd results when applied to debt collecting attorneys.
To the extent the FDCPA imposes some constraints on a lawyer’s advocacy on behalf of a client, it is hardly unique in our law. “[A]n attorney’s ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct.” Nix v. Whiteside, 475 U. S. 157, 168 (1986). Lawyers face sanctions, among other things, for suits presented “for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.” Fed. Rules Civ. Proc. 11(b), (c). Model rules of professional conduct adopted by many States impose outer bounds on an attorney’s pursuit of a client’s interests. See, e. g., ABA Model Rules of Professional Conduct 3.1 (2009) (requiring nonfrivolous basis in law and fact for claims asserted); 4.1 (truthfulness to third parties). In some circumstances, lawyers may face personal liability for conduct undertaken during representation of a client. See, e. g., Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A., 511 U. S. 164, 191 (1994) (“Any person or entity, including a lawyer,... who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under [Securities and Exchange Commission Rule] 10b-5”).
Moreover, a lawyer’s interest in avoiding FDCPA liability may not always be adverse to her client. Some courts have held clients vicariously liable for their lawyers’ violations of the FDCPA. See, e. g., Fox v. Citicorp Credit Servs., Inc., 15 F. 3d 1507, 1516 (CA9 1994); see also First Interstate Bank *601 of Fort Collins, N. A. v. Soucie, 924 P. 2d 1200, 1202 (Colo. App. 1996).
The suggestion that our reading of § 1692k(c) will create unworkable consequences is also undermined by the existence of numerous state consumer protection and debt collection statutes that contain bona fide error defenses that are either silent as to, or expressly exclude, legal errors.[17] Several States have enacted debt collection statutes that contain neither an exemption for attorney debt collectors nor any bona fide error defense at all. See, e. g., Mass. Gen. Laws, ch. 93, § 49 (West 2008); Md. Com. Law Code Ann. § 14-203 (Lexis 2005); Ore. Rev. Stat. § 646.641 (2007); Wis. Stat. § 427.105 (2007-2008). More generally, a group of 21 States as amici supporting Jerman inform us they are aware of “no [judicial] decisions interpreting a parallel state bona fide error provision [in a civil regulatory statute] to immunize a defendant’s mistake of law,” except in a minority of statutes that expressly provide to the contrary.[18] See Brief for State of New York et al. as Amici Curiae 11, and n. 6. Neither Carlisle and its amici nor the dissent demonstrates that lawyers have suffered drastic consequences under these state regimes.
In the dissent’s view, these policy concerns are evidence . that “Congress could not have intended” the reading we adopt today. Post, at 615. But the dissent’s reading raises concerns of its own. The dissent focuses on the facts of this case, in which an attorney debt collector, in the dissent’s *602 view, “acted reasonably at every step” and committed a “technical violation” resulting in no “actual harm” to the debtor. Post, at 622, 617, 618. But the dissent’s legal theory does not limit the defense to attorney debt collectors or “technical” violations.[19] Under that approach, it appears, nonlawyer debt collectors could obtain blanket immunity for mistaken interpretations of the FDCPA simply by seeking the advice of legal counsel. Moreover, many debt collectors are compensated with a percentage of money recovered, and so will have a financial incentive to press the boundaries of the Act's prohibitions on collection techniques. It is far from obvious why immunizing debt collectors who adopt aggressive but mistaken interpretations of the law would be consistent with the statute’s broadly worded prohibitions on debt collector misconduct. Jerman and her amici express further concern that the dissent’s reading would give a competitive advantage to debt collectors who press the boundaries of lawful conduct. They foresee a “race to the bottom” driving ethical collectors out of business. Brief for Petitioner 32; Brief for Public Citizen, Inc., et al. as Amici Curiae 16-18. It is difficult to square such a result with Congress’ express purpose “to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,” § 1692(e).
The dissent’s reading also invites litigation about a debt collector’s subjective intent to violate the FDCPA and the adequacy of procedures maintained to avoid legal error. *603 Cf. Barlow, 7 Pet., at 411 (maxim that ignorance of the law will not excuse civil or criminal liability “results from the extreme difficulty of ascertaining what is, bona fide, the interpretation of the party”). Courts that read § 1692k(c) to permit a mistake-of-law defense have adopted varying formulations of what legal procedures are “reasonably adapted to avoid any [legal] error.”[20] Among other uncertainties, the dissent does not explain whether it would read § 1692k(c) to impose a heightened standard for the procedures attorney debt collectors must maintain, as compared to nonattorney debt collectors. The increased cost to prospective plaintiffs in time, fees, and uncertainty of outcome may chill private suits under the statutory right of action, undermining the FDCPA’s calibrated scheme of statutory incentives to encourage self-enforcement. Cf. FTC, Collecting Consumer Debts: The Challenges of Change 67 (2009) (“Because the [FTC] receives more than 70,000 third-party debt collection complaints per year, it is not feasible for federal government law enforcement to be the exclusive or primary means of deterring all possible law violations”). The state amici predict that, on the dissent’s reading, consumers will have little incentive to bring enforcement actions “where the law [i]s at all unsettled, because in such circumstances a debt collector could easily claim bona fide error of law”; in the States’ view, the resulting “enforcement gap” would be “extensive” at both the federal and state levels. See Brief for State of *604 New York et al. as Amici Curiae 7-10. In short, the policy concerns identified by the dissent tell only half the story.[21]
In sum, we do not foresee that our decision today will place unmanageable burdens on lawyers practicing in the debt collection industry. To the extent debt collecting lawyers face liability for mistaken interpretations of the requirements of the FDCPA, Carlisle, its amici, and the dissent have not shown that “the result [will be] so absurd as to warrant” disregarding the weight of textual authority discussed above. Heintz, 514 U. S., at 295. Absent such a showing, arguments that the Act strikes an undesirable balance in assigning the risks of legal misinterpretation are properly addressed to Congress. To the extent Congress is persuaded that the policy concerns identified by the dissent require a recalibration of the FDCPA’s liability scheme, it is, of course, free to amend the statute accordingly.[22] Congress has wide latitude, for instance, to revise § 1692k to excuse some or all mistakes of law or grant broader discretion to district courts to adjust a plaintiff’s recovery. This Court may not, however, read more into § 1692k(c) than the statutory language naturally supports. We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of *605 the FDCPA resulting from a debt collector’s incorrect interpretation of the requirements of that statute.
* * *
For the reasons discussed above, the judgment of the United States Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Section 1692g(a)(3) requires a debt collector, within five days of an “initial communication” about the collection of a debt, to send the consumer a written notice containing, inter alia, “a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.”

 The District Court distinguished, for instance, Graziano v. Harrison, 950 F. 2d 107, 112 (CA3 1991), which held a consumer’s dispute of a debt under § 1692g must be in writing to be effective. Noting that district courts within the Sixth Circuit had reached different results, and distinguishing one unpublished Sixth Circuit decision which Carlisle suggested approved a form with an in-writing requirement, the court adopted the reasoning from Camacho v. Bridgeport Financial, Inc., 430 F. 3d 1078, 1080-1082 (CA9 2005), and held that the plain language of § 1692g does not impose an “in writing” requirement on consumers. See 464 F. Supp. 2d, at 725.

 Because the question was not raised on appeal, the Court of Appeals did not address whether Carlisle’s inclusion of the “in writing” requirement violated § 1692g. 538 F. 3d, at 472, n. 2. We likewise express no view about whether inclusion of an “in writing” requirement in a notice to a consumer violates § 1692g, as that question was not presented in the petition for certiorari. Compare Graziano, 950 P. 2d, at 112 (reading § 1692g(a)(3) to require that “any dispute, to be effective, must be in writing”), with Camacho, 430 F. 3d, at 1082 (under § 1692g(a)(3), “disputes need not be made in writing”).

 Compare, e. g., 538 F. 3d, at 476 (case below), with Baker v. G. C. Servs. Corp., 677 P. 2d 775, 779 (CA9 1982), and Hulshizer v. Global Credit Servs., Inc., 728 P. 2d 1037, 1038 (CA8 1984) (per curiam).
The Courts of Appeals have also expressed different views about whether 15 U. S. C. § 1692k(c) applies to violations of the PDCPA resulting from a misinterpretation of the requirements of state law. Compare Johnson v. Riddle, 305 P. 3d 1107, 1121 (CA10 2002) (concluding that § 1692k(c) applies where a debt collector’s misinterpretation of a Utah dishonored check statute resulted in a violation of § 1692f(l), which prohibits collection of any amount not “permitted by law”), with Picht v. Jon R. Hawks, Ltd., 236 P. 3d 446, 451-452 (CA8 2001) (stating that § 1692k(c) does not preclude PDCPA liability resulting from a creditor’s mistaken legal interpretation of a Minnesota garnishment statute). The parties disagree about whether § 1692k(e) applies when a violation results from a *581 debt collector’s misinterpretation of the legal requirements of state law or federal law other than the FDCPA. Compare Brief for Petitioner 47-49 with Brief for Respondents 60-62. Because this case involves only an alleged misinterpretation of the requirements of the FDCPA, we need not, and do not, reach those other questions.

 The dissent discounts the relevance of the principle here, on grounds that this case involves the scope of a statutory exception to liability, rather than a provision “delineat[ing] a category of prohibited conduct.” Post, at 625 (opinion of Kennedy, J.). That is a distinction without a difference, as our precedents have made clear for more than 175 years. Barlow involved a statute providing for forfeiture of any goods entered “by a false denomination” in the office of a customs collector “for the benefit of drawback or bounty upon the exportation”; the statute included, however, an exception under which “said forfeiture shall not be incurred, if it shall be made appear . . . that such false denomination . . . happened by mistake or accident, and not from any intention to defraud the revenue.” 7 Pet., at 406; see also Act of Mar. 2,1799, § 84,1 Stat. 694. The Court concluded that the shipment at issue, entered as “refined sugars,” was mislabeled under the prevailing meaning of that term and thus was subject to forfeiture “unless the [petitioner] c[ould] bring himself within the exeeptio[n].” 7 Pet., at 409-410. As there had been no “accident” or “mistake” of fact, the “only mistake, if there ha[d] been any, [wa]s a mistake of law.” Id., at 410-411. The Court observed that the shipper’s conduct, even if “entirely compatible with good faith, [wa]s not wholly free from the suspicion of an intention to overreach ... by passing off, as refined sugars, what he well knew were not admitted to be such.” Id., at 411. But the Court declined to resolve the case on the ground of the shipper’s intent, instead invoking the “common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." Ibid. Notwithstanding the existence of a statutory exception — which did not expressly exclude legal errors from the category of “mistake[s]” made without “intention to defraud” — the Court saw “not the least reason to suppose that the legislature, in this enactment, had any intention to supersede the common principle.” Ibid.
The dissent implies Barlow is too old to be relevant. Post, at 626. But at least in the context of stare decisis, this Court has suggested precedents tend to gain, not lose, respect with age. See Montejo v. Louisiana, 556 U. S. 778, 792-793 (2009). In any event, Justice Story’s opinion for a unanimous Court in Barlow is hardly a relic. As recently as 1994 this Court cited it for the “venerable principle" that ignorance of the law generally is no defense. Ratzlaf v. United States, 510 U. S. 135, 149; see also Cheek v. United States, 498 U. S. 192, 199 (1991) (citing Barlow for a similar proposition).

 Different considerations apply, of course, in interpreting criminal statutes. Safeco Ins. Co. of America v. Burr, 551 U. S. 47, 57-58, n. 9 (2007). But even in that context, we have not consistently required knowledge that the offending conduct is unlawful. See, e. g., Ellis v. United States, 206 U. S. 246, 255, 257 (1907) (observing, in the context of a statute imposing liability for “intentiona[l] violations],” that “[i]f a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent”).

 Indeed, in International Minerals, the Court faced, and evidently rejected, the distinction the dissent would draw today between the term “ ‘violation’ ” and a reference to “the conduct giving rise to the violation.” Post, at 613. As noted, in International Minerals, the Court rejected a mistake-of-law defense for a statute that applied to those who “knowingly violat[e]” certain regulations. 402 U. S., at 559, 563. In so doing, however, we expressly acknowledged the contrary view adopted by one lower court opinion that knowledge of the regulations was necessary. Id., at 562 (citing St. Johnsbury Trucking Co. v. United States, 220 F. 2d 393, 397 (CA1 1955) (Magruder, C. J., concurring)). The dissenting opinion in International Minerals quoted extensively portions of the St. Johnsbury concurrence that reached its result by contrasting a statute making it an offense “‘“knowingly” to sell adulterated milk’” with one that makes it an offense “‘knowingly [to] violat[e] a regulation.’” 402 U.S., at 566 (opinion of Stewart, J.) (quoting 220 F. 2d, at 398).
Liparota v. United States, 471 U. S. 419 (1985), is also inapposite. Cf. post, at 614 (Kennedy, J., dissenting). Concluding that a mistake-of-law defense is available under a provision that specifies particular conduct undertaken while “‘knowing’” that food stamp coupons had been ‘“used in any manner in violation of [law],”' 471 U. S., at 428, n. 12, says little about the meaning of a “not intentional” “violation” in 15 U. S. C. § 1692k(e). Indeed, the statute in Liparota bears a closer resemblance to the administrative-penalty provision in §45(m)(l)(A). See supra, at 583-584.

 One of Carlisle’s amici suggests the FTC safe harbor would provide a more categorical immunity than § 1692k(c), obviating the need, e. g., to maintain “procedures reasonably adapted to avoid any such error.” Brief for National Association of Retail Collection Attorneys as Amicus Curiae 18-19 (NARCA Brief). Even if that is true, we need not conclude that the FTC safe harbor would be rendered entirely superfluous to reason that the existence of that provision counsels against extending the bona fide error defense to serve an overlapping function.

 Carlisle raises concerns about whether, in light of contemporary administrative practice, the FTC safe harbor is a realistic way for debt collectors and their lawyers to seek guidance on the numerous time-sensitive legal issues that arise in litigation. These practical concerns, to which we return below, do not change our understanding of the statutory text itself or the likely intent of the enacting Congress.

 See Ives v. W.T. Grant Co., 522 F. 2d 749, 757-758 (CA2 1975) (concluding that the bona fide error defense in § 1640(c) was unavailable despite creditor’s reliance, in selecting language for credit contract forms, on a pamphlet issued by the Federal Reserve Board); Haynes v. Logan Furniture Mart, Inc., 503 F. 2d 1161, 1167 (CA7 1974) (“[Section] 1640(c) offers no shelter from liability for the defendant, whose error... was judgmental with respect to legal requirements of the Act and not clerical in nature”); Palmer v. Wilson, 502 F. 2d 860, 861 (CA9 1974) (similar).
Carlisle contends the meaning of TILA’s defense was unsettled at the time of the FDCPA’s enactment, relying first on several District Court opinions extending the defense to good-faith legal errors. See, e. g., Welmaker v. W.T. Grant Co., 365 F. Supp. 531, 544 (ND Ga. 1972). But even assuming Congress would have looked to district court, rather than court of appeals, opinions in discerning the meaning of the statutory language, applicable Circuit precedent had cast some doubt on those decisions by the time the FDCPA was enacted. See, e. g., Turner v. Firestone Tire & Rubber Co., 537 F. 2d 1296, 1298 (CA5 1976) (per curiam) (referring to § 1640(e) as the “so-called clerical error defense”). Carlisle also relies on the holding in Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So. 2d 150 (La. 1973). But in that case, the Louisiana Supreme Court concluded only that *590 a lender’s mistaken interpretation of state usury law did not “amoun[t] to an intentional violation of [TILA’s] disclosure requirements.” Id., at 161. The Louisiana court had no occasion to address the question analogous to the one we consider today: whether TILA’s bona fide error defense extended to violations resulting from mistaken interpretation of TILA itself See n. 4, supra; see also Starks v. Orleans Motors, Inc., 372 F. Supp. 928, 931 (ED La.) (distinguishing Thrift Funds on this basis), aff’d, 500 F. 2d 1182 (CA5 1974). These precedents therefore do not convince us that Congress would have ascribed a different meaning to the statutory language it chose for the FDCPA. Compare post, at 607 (Scalia, J., concurring in part and concurring in judgment), with Herman & MacLean v. Huddleston, 459 U. S. 375, 384-386, and n. 21 (1983) (concluding that Congress had “ratified” the “well-established judicial interpretation” of a statute by leaving it intact during a comprehensive revision, notwithstanding “[t]wo early District Court decisions,” not subsequently followed, that had adopted a contrary view).

 That only three Coruts of Appeals had occasion to address the question by the time the FDCPA was enacted does not render such an inference unreasonable. Contra, post, at 607 (opinion of Scalia, J.). Whether or not we would take that view when such an inference serves as a court’s *591 sole interpretative guide, here our conclusion also relies on common principles of statutory interpretation, as well as the statute's text and structure. Moreover, the inference is supported by the fact that TILA and the FDCPA were enacted as complementary titles of the CCPA, a comprehensive consumer protection statute. While not neeessary to our conclusion, evidence from the legislative record demonstrates that some Members of Congress understood the relationship between the FDCPA and existing provisions of the CCPA. See, e. g., 123 Cong. Ree. 10242 (1977) (remarks of Rep. Annunzio) (civil penalty provisions in House version of bill were “consistent with those in the [CCPA]”); Fair Debt Collection Practices Act: Hearings on S. 656 et al. before the Subcommittee on Consumer Affairs of the Senate Committee on Banking, Housing and Urban Affairs, 95th Cong., 1st Sess., 51, 707 (1977) (statement of Rep. Wylie) (describing “[c]ivil liability provisions” in the House bill as “the standard provisions that attach to all the titles of the [CCPA]”).

 Although again not necessary to our conclusion, evidence from the legislative record suggests some Members of Congress understood the amendment to “elarif[y]” the meaning of TILA’s bona fide error defense “to make dear that it applies to mechanical and computer errors, provided *592 they are not the result of erroneous legal judgments as to the act’s requirements.” S. Rep. No. 96-73, pp. 7-8 (1979); see also Lockhart, 153 A. L. R. Fed. 211-212, § 2[a] (1999) (amendment “was intended merely to clarify what was then the prevailing view, that the bona fide error defense applies to clerical errors, not including errors of legal judgment” (relying on S. Rep. No. 96-368, p. 32 (1979))).
The concurring and dissenting opinions perceive an inconsistency between these references to clerical errors, as well as similar references in the pre-FDCPA precedents interpreting TILA, n. 10, supra, and reading the FDCPA’s bona fide error defense to include factual mistakes. Post, at 608-609, and n. 2 (opinion of Scalia, J.); post, at 630 (opinion of Kennedy, J.). The quoted legislative history sources, however, while stating expressly that the TILA defense excludes legal errors, do not discuss a distinction between clerical and factual errors. Similarly, the cited cases interpreting TILA do not address a distinction between factual and clerical errors; rather, the courts were presented with claims that the defense applied to mistakes of law or other nonfaetual errors that the courts found not to be bona fide. See Ives, 522 F. 2d, at 756-757; Haynes, 503 F. 2d, at 1166-1167; Palmer, 502 F. 2d, at 861. While factual mistakes might, in some circumstances, constitute bona fide errors and give rise to violations that are “not intentional” within the meaning of § 1692k(c), we need not and do not decide today the precise distinction between clerical and factual errors, or what kinds of factual mistakes qualify under the FDCPA’s bona fide error defense. Cf. generally R. Hobbs et al., National Consumer Law Center, Fair Debt Collection § 7.2 (6th ed. 2008 and Supp. 2009) (surveying case law on scope of § 1692k(c)).

 The Government observes that several federal agencies have construed similar bona fide error defenses in statutes they administer to exclude errors of law. See Brief for United States as Amicus Curiae 28-30. The Secretary of Housing and Urban Development, for instance, has promulgated regulations specifying that the bona fide error defense in the Real Estate Settlement Procedures Act of 1974, 12 U. S. C. § 2607(d)(3), does not apply to “[a]n error of legal judgment,” 24 CFR § 3500.15(b)(l)(ii) (2009). While administrative interpretations of other statutes do not control our reading of the FDCPA, we find it telling that no agency has adopted the view of the Court of Appeals. Of course, nothing in our opinion today addresses the validity of such regulations or the authority of agencies interpreting bona fide error provisions in other statutes to adopt a different reading. See National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967, 982-983 (2005).

 For instance, an amendment was proposed and rejected during the Senate Banking Committee’s consideration of the FDCPA that would have required proof that a debt collector’s violation was “knowin[g].” Senator Riegle, one of the Act’s primary sponsors, opposed the change, explaining that the bill reflected the view that “certain things ought not to happen, period. , . . [W]hether somebody does it knowingly, willfully, you know, with a good heart, bad heart, is really quite incidental.” See Senate Committee on Banking, Housing and Urban Affairs, Markup Session: S. 1130— Debt Collection Legislation 60 (July 26, 1977) (hereinafter Markup); see also ibid. (“We have left a way for these disputes to be adj[u]dicated if they are brought, where somebody can say, I didn’t know that, or my computer malfunctioned, something happened, I didn’t intend for the effect to be as it was”). To similar effect, a House Report on an earlier version of the bill explained the need for new legislation governing use of the mails for debt collection on grounds that existing statutes “frequently require[d]” a showing of “specific intent[,] which is difficult to prove.” H. R. Rep. No. 95-131, p. 3 (1977). Elsewhere, to be sure, the legislative record contains statements more supportive of Carlisle’s interpretation. In particular, a concern was raised in the July 26 markup session that the TILA bona fide error defense had been interpreted “as only protecting against a mathematical error,” and that the FDCPA defense should “go beyond” TILA to “allow the courts discretion to dismiss a violation where it was a technical error.” Markup 20. In response, a staffer explained that the FDCPA defense would “apply to any violation of the act which was unintentional,” and answered affirmatively when the chairman asked: “So it’s not simply a mathematical error but any bona fide error without intent?” Id., at 21. Whatever the precise balance of these statements may be, we can conclude that this equivocal evidence from legislative history does not displace the clear textual and contextual authority discussed above.

 The dissent also cites several other consumer protection statutes, such as TILA and the Fair Credit Reporting Act, 15 U. S. C. § 1681 et seq., which in its view create “incentives to file lawsuits even where no actual harm has occurred” and are illustrative of what the dissent perceives to be a “troubling dynamic of allowing certain actors in the system to spin even good-faith, technical violations of federal law into lucrative litigation.” Post, at 616-617. The dissent’s concern is primarily with Congress’ policy choice, embodied in statutory text, to authorize private rights of action and recovery of attorney’s fees, costs, and in some cases, both actual and statutory damages. As noted, in one of the statutes the dissent cites, Congress explicitly barred reliance on a mistake-of-law defense notwithstanding the “highly technical” nature of the scheme. See 15 U. S. C. § 1640(c) (TILA); Ford Motor Credit Co. v. Milhollin, 444 U. S. 555, 566 (1980). Similarly, the plain text of the FDCPA authorizes a private plaintiff to recover not only “actual damage[s]” for harm suffered but also “such additional damages as the court may allow,” § 1692k(a).

 The Courts of Appeals generally review a District Court’s calculation of an attorney’s fee award under § 1692k for abuse of discretion. See, e. g., Carroll v. "Wolpoff & Abramson, 58 F. 3d 626, 628-629 (CA4 1995); Emanuel v. American Credit Exch., 870 F. 2d 805, 809 (CA2 1989). Many District Courts apply a lodestar method, permitting downward adjustments in appropriate circumstances. See, e. g., Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P. C., 574 F. 3d 852 (CA7 2009) (relying on Hensley v. Eckerhart, 461 U. S. 424 (1983)); Ferland v. Conrad Credit Corp., 244 F. 3d 1145, 1148-1151, and n. 4 (CA9 2001) (per curiam); see generally Hobbs, Fair Debt Collection § 6.8.6. In Schlacher, for instance, the court affirmed a downward adjustment for the “unnecessary use of multiple attorneys... in a straightforward, short-lived [FDCPA] case.” 574 F. 3d, at 854-855. In Carroll, the court found no abuse of discretion in a District Court’s award of a $500 attorney’s fee, rather than the lodestar amount, where the lawsuit had recovered only $50 in damages for “at most a technical violation” of the FDCPA. 53 F. 3d, at 629-631.
Lower courts have taken different views about when, and whether, § 1692k requires an award of attorney’s fees. Compare Tolentino v. Friedman, 46 F. 3d 645 (CA7 1995) (award of fees to a successful plaintiff “mandatory”), and Emanuel, 870 F 2d, at 808-809 (same, even where the plaintiff suffered no actual damages), with Graziano, 950 F. 2d, at 114, and n. 13 (attorney’s fees may be denied for plaintiff's “bad faith conduct”), and Johnson v. Eaton, 80 F. 3d 148, 150-152 (CA5 1996) (“attorney’s fees ... are only available [under § 1692k] where the plaintiff has succeeded in establishing that the defendant is liable for actual and/or additional damages”; this reading “will deter suits brought only as a means of generating attorney’s fees”). We need not resolve these issues today to express doubt that our reading of § 1692k(c) will impose unmanageable burdens on debt collecting lawyers.

 See Brief for Ohio Creditor’s Attorneys Association et al. as Amici Curiae 4-6, and nn. 7-8 (identifying “134 state consumer protection and debt collection statutes,” 42 of which expressly exclude legal errors from their defenses for bona fide errors).

 See, e. g., Kan. Stat. Ann. § 16a-5-201(7) (2007) (provision of Kansas Consumer Credit Code providing a defense for a “bona fide error of law or fact”); Ind. Code §24-9-5-5 (West 2004) (defense for creditor’s “bona fide error of law or fact” in Indiana Home Loan Practices Act).

 The dissent also downplays the predicate fact that respondents in this case brought a foreclosure lawsuit against Jerman for a debt she had already repaid. Neither the lower courts nor this Court has been asked to consider, and thus we express no view about, whether Carlisle could be subject to liability under the FDCPA for that uncontested error — regardless of how reasonably Carlisle may have acted after the mistake was pointed out by Jerman’s (privately retained) lawyer.

 Compare Hartman v. Great Seneca Financial Corp., 569 F. 3d 606, 614-615 (CA6 2009) (suggesting that reasonable procedures might include “performing] ongoing FDCPA training, procuring] the most recent case law, or hav[ing] an individual responsible for continuing compliance with the FDCPA”), with Johnson v. Riddle, 443 F. 3d 723, 730-731 (CA10 2006) (suggesting that researching case law and filing a test case might be sufficient, but remanding for a jury determination of whether the “limited [legad] analysis” undertaken was sufficient and whether the test case was in fact a “sham”).

 The dissent adds in passing that today’s decision “creates serious concerns ... for First Amendment rights.” Post, at 623 (citing Legal Services Corporation v. Velazquez, 531 U. S. 533, 545 (2001)). That claim was neither raised nor passed upon below, and was mentioned neither in the certiorari papers nor the parties’ merits briefing to this Court. We decline to express any view on it. See Cutter v. Wilkinson, 544 U. S. 709, 718, n. 7 (2005).

 The FDCPA has been amended some eight times since its enactment in 1977; the most recent amendment addressed a concern not unrelated to the question we consider today, specifying that a pleading in a civil action is not an “initial communication” triggering obligations under § 1692g requiring a written notice to the consumer. Financial Services Regulatory Relief Act of 2006, § 802(a), 120 Stat. 2006 (codified at 15 U. S. C. § 1692g(d)).