Justice Sotomayor,
with whom Justice Kagan joins, dissenting.
Federal Rule of Civil Procedure 54(d)(1) is a default standard that grants district courts discretion to award litigation costs to a prevailing party. This default, however, gives way when a federal statute includes a costs provision that “provides otherwise.” The Fair Debt Collection Practices Act (FDCPA), 91 Stat. 874, 15 U. S. C. § 1692 et seq., contains a costs provision, § 1692k(a)(3), and it “provides otherwise.” That is apparent from the statute’s plain language, which limits a court’s discretion to award costs to prevailing defendants to cases “brought in bad faith and for the purpose of harassment.” In reaching the opposite conclusion, the Court ignores the plain meaning of both the FDCPA and Rule 54(d)(1) and renders the statutory language at issue in this case meaningless. I respectfully dissent.
I
The majority correctly recognizes, see ante, at 376, the fundamental principle of statutory construction that we begin “with the language of the statute itself.” United States v. Ron Pair Enterprises, Inc., 489 U. S. 235, 241 (1989); Ingalls Shipbuilding, Inc. v. Director, Office of Workers’ Compensation Programs, 519 U. S. 248, 255 (1997); Caminetti v. United States, 242 U. S. 470, 485 (1917). We presume that Congress “means in a statute what it says there,” Connecticut Nat. Bank v. Germain, 503 U. S. 249, 254 (1992), and “where . . . the statute’s language is plain, the sole function of the courts is to enforce it according to its terms.” Ron Pair, 489 U. S., at 241 (internal quotation marks omitted). This basic tenet *389 is the appropriate starting point for interpreting both Rule 54(d)(1) and § 1692k(a)(3). After invoking this principle, however, the majority casts it aside entirely in interpreting the statute and the Rule.
A
Rule 54(d)(1) states, as relevant here, that “[ujnless a federal statute . .. provides otherwise, costs-—other than attorney’s fees—should be allowed to the prevailing party.” The first question is what it means for a statute to “provid[e] otherwise” than Rule 54(d)(1).
Because the phrase “provides otherwise” is not defined in the Federal Rules of Civil Procedure, we look to its ordinary meaning. Asgrow Seed Co. v. Winterboer, 513 U. S. 179, 187 (1995). In common usage, to “provide otherwise” means to “make a . . . stipulation” that is “differen[t].” Webster’s Third New International Dictionary 1598, 1827 (2002) (Webster’s Third) (defining “provide” and “otherwise,” respectively); see Random House Dictionary of the English Language 1372,1556 (2d ed. 1987) (Random House) (“to arrange for or stipulate” “in another manner”); 10 Oxford English Dictionary 984 (2d ed. 1989) (Oxford Dictionary); 12 id., at 713 (“to stipulate” “[i]n another way .. .; in a different manner”). This reading of the plain text is confirmed by the original 1937 codification of the Rule, which made clear that any “express provision” relating to costs in a statute is sufficient to displace the default.[1]
*390 Accordingly, to displace Rule 54(d)(1), a federal statute need only address costs in a way different from, but not necessarily inconsistent with, the default.[2] The reason is straightforward. If Congress has enacted a provision with respect to costs in a statute, there is no longer any need for the default, so it gives way. This design of the Rule is sensible, because many statutes contain specific costs provisions. 10 J. Moore, Moore’s Federal Practice § 54.101[1][c], p. 54-160 (3d ed. 2012) (noting that such statutes “are far too numerous to list comprehensively”). Rule 54(d)(1) is therefore consistent with the canon of statutory interpretation that “a precisely drawn, detailed statute pre-empts more general remedies.” Hinck v. United States, 550 U. S. 501, 506 (2007) (internal quotations marks omitted); Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U. S. 437, 445 (1987); United States v. Erika, Inc., 456 U. S. 201, 208 (1982).
While purporting to interpret the “ordinary meaning” of Rule 54(d)(1), ante, at 376, the majority immediately abandons the ordinary meaning. The majority concludes that a statute provides otherwise for purposes of Rule 54(d)(1) only if it is “contrary” to the default. Ante, at 377. But the majority does not cite even a single dictionary definition in support of that reading, despite the oft-cited principle that a definition widely reflected in dictionaries generally governs over other possible meanings.[3] Lacking any dictionary support for its interpretation, the majority relies instead upon a treatise *391 published nearly 60 years after the Rule’s adoption. See ante, at 378-379 (citing 6 J. Moore, Moore’s Federal Practice, p. 54-304 (2d ed. 1996)).
“Otherwise” means “different.” Webster’s Third 1598; see supra, at 390. The majority’s preferred term of art, “contrary,” sets a higher bar; it signifies “the opposite,” or “a proposition, fact, or condition incompatible with another.” Webster’s Third 495 (emphasis added). See also American Heritage Dictionary of the English Language 399 (5th ed. 2011) (“[ojpposed, as in character or purpose”); 3 Oxford Dictionary 844 (“[ojpposed in nature or tendency; diametrically different, extremely unlike”); Random House 442 (“[o]p-posite in nature or character; diametrically or mutually opposed”).
Indeed, the majority’s reading does not square with the everyday meaning of “otherwise.” Consider, for example, a medication labeled with the instruction, “take twice a day unless otherwise directed.” If a doctor advises her patient to take the medicine “in the morning,” the patient would understand her to mean that he should take the medicine once a day, each morning. Although the instruction to take the medication in the morning is not incompatible with taking it twice a day—it could be taken in the evening as well— an ordinary English speaker would interpret “otherwise” to mean that the doctor’s more specific instructions entirely supersede what is printed on the bottle. Rule 54(d)(1) is just the same: Its default is supplanted whenever Congress provides more specific instructions, not only when they are diametrically opposed to it.
B
1
Thus, the straightforward question in this case is whether § 1692k(a)(3) implements a “different” standard with respect to costs than Rule 54(d)(1), and so “provides otherwise.” As relevant, § 1692k(a)(3) states: “On a finding by the court that *392 an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney’s fees reasonable in relation to the work expended and costs.”
It is readily apparent that this provision is different from the default of Rule 54(d)(1). In § 1692k(a)(3), Congress described with specificity a single circumstance in which costs may be awarded. Far from merely restating a district court’s discretion to award costs, this provision imposes a prerequisite to the exercise of that discretion: a finding by the court that an action was brought in bad faith and for the purpose of harassment.
Because the text is plain, there is no need to proceed any further. Even so, relevant canons of statutory interpretation lend added support to reading § 1692k(a)(3) as having a negative implication. That reading accords with the ex-pressio unius, exclusio alterius canon, which instructs that when Congress includes one possibility in a statute, it excludes another by implication. See Chevron U. S. A. Inc. v. Echazabal, 536 U. S. 73, 80-81 (2002). This rule reinforces what the text makes clear. By limiting a court’s discretion to award costs to cases brought in bad faith or for the purpose of harassment, Congress foreclosed the award of costs in other circumstances.[4]
Petitioner’s interpretation of the statute is also strongly favored by the rule that statutes should be read to avoid superfluity. Under this “most basic of interpretative canons, . . . ‘“[a] statute should be construed so that effect is *393 given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant.’”” Corley v. United States, 556 U. S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U. S. 88, 101 (2004)). Respondent’s reading, as it mostly acknowledges, renders the entire sentence meaningless because it reiterates powers that federal courts already possess with respect to both costs and attorney’s fees. See Brief for Respondent 22-24.
The majority rejects this argument, citing the rule that this canon “‘assists only where a competing interpretation gives effect to every clause and word of a statute.’” Ante, at 385 (quoting Microsoft Corp. v. i4i Ltd. Partnership, 564 U. S. 91, 106 (2011)). In its view, neither of the available interpretations can eliminate superfluity because the attorney’s fees provision is redundant under any reading. Ante, at 385. But the canon against superfluity surely counsels against an interpretation that renders the entire provision at issue superfluous when a competing interpretation would at least render part of the provision meaningful. Nor does the majority’s observation that redundancy is “ ‘hardly unusual,”’ ibid., in provisions relating to costs make the canon inapplicable. While Congress sometimes drafts redundant language with respect to costs, Congress did not do so in § 1692k(a)(3).[5] Instead, it drafted specific language that permits a court to award costs only on the satisfaction of a condition.
Interpreting § 1692k(a)(3) as having a negative implication is consistent with our construction of another statute that includes similar language. In Cooper Industries, Inc. v. *394 Aviall Services, Inc., 543 U. S. 157, 166 (2004) (opinion for the Court by Thomas, J.), we considered a provision in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U. S. C. § 9613(f)(1), that provided: “Any person may seek contribution . . . during . . . any civil action under section 9606 of this title.” (Emphasis added.) We rejected the argument that the word “may” indicated that “during a civil action” was one but not the exclusive circumstance in which the right of contribution was available. 543 U. S., at 166. We instead adopted the natural reading of the text, holding that a party’s ability to seek contribution was limited by the phrase “during any civil action” and that contribution was only available while a lawsuit is pending. Ibid. The same logic applies here, because § 1692k(a)(3) imposes a closely analogous condition on a court’s discretion to award costs.
2
The first sentence of §1692k(a)(3) underscores that Congress implemented a different rule than Rule 54(d)(1). That sentence provides that a debt collector who violates the FDCPA is “liable to” a prevailing plaintiff for “the costs of the action, together with a reasonable attorney’s fee as determined by the court.” This sentence makes a losing defendant always liable for the “costs of the action,” which is a clear departure from the Rule 54(d)(1) discretionary default. Cf. Taniguchi v. Kan Pacific Saipan, Ltd., 566 U. S. 560, 565-566 (2012). Because Congress deviated from Rule 54(d)(1) in the first sentence of § 1692k(a)(3), the most reasonable reading is that the sentence that immediately follows, which states the rule for prevailing defendants, takes a similar path.
The majority believes that its reading of the costs provision follows from the first sentence as well, but for a different reason. Ante, at 383-384. It suggests that if Congress had not included costs in the second sentence, a plaintiff might *395 have been able to argue that the inclusion of costs in the first sentence and the exclusion of costs in the second indicated that defendants could recover only fees when an action is brought in bad faith. The majority then speculates that Congress included costs in the second sentence to foreclose that argument.
The text of the previous sentence makes plain, however, that the second sentence departs from the Rule 54(d)(1) default, and the majority offers no evidence in support of its supposition that Congress intended a different meaning.[6] Moreover, I see no basis for invoking potential confusion or indulging in speculation to explain away the words Congress chose. Ante, at 383-384. Some Members of the majority have expressed doubt about the relevance of legislative history, claiming that relying upon it is analogous to “entering a crowded cocktail party and looking ... for one’s friends.” Conroy v. Aniskoff, 507 U. S. 511, 519 (1993) (Scalia, J., concurring in judgment). But speculating whole cloth about congressional intent, as the majority does, is surely more problematic. The majority is saved the trouble of having to look for its friends at the party; it simply invites them.
HH hH
Reduced to its essence, the majority’s analysis turns on reading § 1692k(a)(3) in the context of what it calls the “venerable presumption” that prevailing parties are entitled to *396 costs. See ante, at 377. Even if it were appropriate to consider a background presumption rather than reading the plain text at issue, the majority’s characterization of the presumption is at best incomplete.
First, the Court’s suggestion that the presumption regarding costs is a “venerable” one in American law is an overstatement. Ibid. It is true, as the majority points out, that prior to the federal rules, “prevailing parties were entitled to costs as of right in actions at law while courts had discretion to award costs in equity proceedings.” Ante, at 377, n. 3; see Wright & Miller §2665, at 199. But the doctrine governing costs at law carved out an important exception for statutory provisions that set forth a different rule.[7] Where there was such a statute, courts would simply apply it. In its assessment of the background principles underlying its approach, the majority glosses over the longstanding expectation that Congress often enacts different rules with respect to costs, and when it does, these rules govern.
Second, Rule 54(d)(1) embraces this long-recognized exception because it specifies that a statute can displace its default rule. To repeat, Rule 54(d)(1) merely enacts a default standard that applies unless, among other things, a statute or rule “provides otherwise.” Here, for the reasons explained, Congress enacted exactly such a statute. That is clear from the text, because § 1692k(a)(3) conditions the award of costs on *397 the satisfaction of a condition, and because the previous sentence of the same provision breaks from the default.
* * *
The plain text of Rule 54(d)(1) and § 1692k(a)(3) dictates the result in this case. Accordingly, I would reverse the Tenth Circuit and hold that §1692k(a)(3) “provides otherwise” than Rule 54(d)(1), such that a district court cannot award costs to a prevailing defendant in an FDCPA action except upon a showing that the action was brought in bad faith and for the purpose of harassment. I respectfully dissent.

 The original codification of the Rule provided that “[ejxcept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.” Ante, at 378 (quoting the Rule; emphasis added; internal quotation marks omitted). The language in the Rule was later revised to its current form in 2007, but as the majority acknowledges, the Rules Committee indicated the changes were “ ‘stylistic only.’ ” Ibid, (quoting Advisory Committee’s Notes, 28 U. S. C. App., p. 734 (2006 ed., Supp. V)).

 See 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2665, p. 200 (3d ed. 1998 and Supp. 2012) (hereinafter Wright & Miller) (Rule 54 “provides that ordinarily the prevailing party shall be allowed costs other than attorney’s fees unless . . . some other provision for costs is made by a federal statute or the civil rules” (emphasis added)).

 See, e.g., MCI Telecommunications Corp. v. American Telephone & Telegraph Co., 512 U. S. 218, 225 (1994) (opinion for the Court by Scalia, J.) (rejecting the argument that an alternative definition should control the meaning of “modify” where “[vjirtually every dictionary we are aware of says that ‘to modify’ means to change moderately or in minor fashion”).

 The majority suggests that this canon does not apply to §1692k(a)(3) because it only aids where “ ‘it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.’ ” Ante, at 381 (quoting Barnhart v. Peabody Coal Co., 537 U. S. 149, 168 (2003)). The best evidence of congressional intent, however, is the statutory text that Congress enacted. West Virginia Univ. Hospitals, Inc. v. Casey, 499 U. S. 83, 98 (1991). And here, the plain language of § 1692k(a)(3) makes it clear that Congress meant to foreclose other possible meanings. See supra this page.

 See, e. g., 15 U. S. C. § 6104(d) (Telemarketing and Consumer Fraud and Abuse Prevention Act) (“The court... may award costs of suit and reasonable fees for attorneys and expert witnesses to the prevailing party”); 42 U. S. C. § 3613(c)(2) (Fair Housing Act) (“In a civil action . . . the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee and costs”); see also 28 U. S. C. § 1332(b) (failure to recover jurisdictional amount).

 The majority does not explain why its speculation about legislative intent is more persuasive than the Solicitor General’s view that saddling potential plaintiffs with costs would undermine the FDCPA’s “ ‘calibrated scheme’ ” of enforcement. Brief for United States as Amicus Curiae 10 (quoting Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L. P. A., 559 U. S. 573, 603 (2010)). Under the Solicitor General’s interpretation, because the recoveries in these cases are not certain to be large, consumers may be deterred from bringing FDCPA claims if they are faced with the risk of paying costs. See Brief for United States 21-28. This outcome would thwart Congress’ expectation that the FDCPA was to be primarily enforced by consumers. Ibid.

 See Ex parte Peterson, 253 U. S. 300, 318 (1920) (“[I]n actions at law the prevailing party is entitled to costs as of right . . . , except in those few cases where by express statutory provision or established principles costs are denied” (emphasis added)); see also United States v. Treadwell, 15 F. 532, 534 (SDNY 1883) (“[T]he prevailing party shall be entitled to costs in all cases, unless otherwise expressly provided by lavf’ (emphasis added; internal quotation marks omitted)); Payne, Costs in Common Law Actions in the Federal Courts, 21 Va. L. Rev. 397, 430 (1934) (“By reason of the numerous changes in the acts of Congress respecting costs, many of the older cases are not now safe precedents. Care should be exercised, therefore, to make an intelligent use of the cases decided prior to the enactment of various statutes”).