# United States Court of Appeals for the Federal Circuit

---

**SARAH VESTAL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2020-1771

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-19-0497-I-1.

---

Decided: June 14, 2021

---

JILLIAN T. WEISS, Law Office of Jillian T. Weiss, P.C., Brooklyn, NY, argued for petitioner.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST[*], PLAGER, and CHEN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.

*Circuit Judge* PLAGER concurs in the result.

PROST, *Circuit Judge*.

Ms. Sarah Vestal petitions for review of a decision by the Merit Systems Protection Board ("Board") sustaining her removal from the Internal Revenue Service ("IRS") for intentionally disclosing taxpayer information to an unauthorized person. *Vestal v. Dep't of the Treasury*, No. DA-0752-19-0497-I-1, 2020 MSPB LEXIS 135 (M.S.P.B. Jan. 14, 2020) (decision available at App. 1–21[1]) ("*Decision*"). We affirm.

## BACKGROUND

Ms. Vestal was an IRS Internal Revenue Agent for approximately ten years. S. App. 32.[2] Her duties included performing examinations, usually in the field of small businesses or self-employed taxpayers. S. App. 60. As a part of her job, she routinely had access to personally identifiable and other taxpayer information. *Decision*, 2020 MSPB LEXIS 135, at *27–28. Between 2009 and 2018, Ms. Vestal received annual "Privacy, Information Protection and Disclosure training." S. App. 32.

In October 2018, Ms. Vestal received a notice of proposed suspension for displaying discourteous and unprofessional conduct and for failing to follow managerial directives. S. App. 16–18. In preparing her defense, she

---

[*]    Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

[1]    "App." refers to the appendix filed by Ms. Vestal with her opening brief.

[2]    "S. App." refers to the supplemental appendix filed by the government.

sent her attorney an Examining Officer's Activity Record from a taxpayer's file. S. App. 32. It is undisputed that this record included personally identifiable and other taxpayer information and that Ms. Vestal's attorney was not authorized to receive such information. *See, e.g.*, Petitioner's Br. 15; App. 78–79; S. App. 78. It is also undisputed that Ms. Vestal sent the record to her attorney without first obtaining authorization from the agency, without making any redactions, without relying on any advice from legal counsel before making the disclosure, and without being aware of any rule or regulation that would have permitted the disclosure without authorization. S. App. 32.

Ms. Vestal's supervisor, Mr. Tonnie Buggs, issued a proposed removal letter recommending that Ms. Vestal be removed for making an unauthorized disclosure. S. App. 1–4. Mr. Alain Dubois, the deciding official, decided to remove Ms. Vestal from service, explaining in his removal letter "that a removal will promote the efficiency of the Service and that a lesser penalty would be inadequate." S. App. 5–9.

Ms. Vestal appealed her removal to the Board. After holding a hearing, the administrative judge affirmed. *Decision*, 2020 MSPB LEXIS 135, at *1. The administrative judge concluded that the agency proved its charge—that Ms. Vestal unlawfully disclosed taxpayer information to an unauthorized person—by preponderant evidence, as Ms. Vestal stipulated. *Id.* at *2–4. The administrative judge also determined that the agency had shown a nexus between the employee's conduct and the efficiency of the service, as Ms. Vestal "routinely had access to [taxpayer's personally identifiable information] and other taxpayer information, and the unauthorized disclosure of that information jeopardizes the integrity of the agency." *Id.* at *28.

Further, the administrative judge sustained the agency's chosen penalty of removal. *Id.* The

administrative judge highlighted that the unauthorized disclosure was made to someone "over whom the agency had no control as to subsequent disclosure." *Id.* at *30. Such a disclosure was "very serious," as the IRS "is charged with collecting the nation's revenue, most of which is paid voluntarily," and the "disclosure of taxpayer information erodes taxpayer confidence when entrusting information to the agency, thereby jeopardizing the voluntary submission of revenue." *Id.* at *29–30. The administrative judge elaborated: "[Mr.] Dubois credibly testified Revenue Agents are trained that taxpayer privacy is 'sacrosanct' and any disclosure of taxpayer information outside of work is an 'absolute no-no.'" *Id.* at *32.

The administrative judge further concluded that the record supported Mr. Dubois's conclusion that Ms. Vestal's disclosure was intentional. *Id.* at *30–32. The administrative judge highlighted that the agency's table of penalties recommends removal for any first offense of intentional disclosures of taxpayer information to unauthorized persons. *Id.* at *30–31. The administrative judge "credit[ed] [Ms. Vestal's] testimony that her disclosure of taxpayer information was not intentional in the sense that she did not intend to violate a law or policy." *Id.* at *31–32. Specifically, Ms. Vestal stated that she incorrectly believed that attorney-client privilege protected the disclosure to her attorney from being unauthorized. The administrative judge explained that Ms. Vestal nevertheless did "act[] intentionally in that she knowingly transmitted a taxpayer's record to her attorney." *Id.* at *32. The administrative judge further acknowledged that Mr. Dubois considered Ms. Vestal's prior suspension as aggravating, her job performance as mitigating, and her ten years of service with the agency as mitigating though also supporting that she had ample notice of the seriousness of unauthorized disclosures of taxpayer information. *Id.* After considering all the evidence, the administrative judge ultimately concluded that the

penalty of removal was not unreasonable, particularly in view of the seriousness of the sustained charge. *Id.* at \*33.

The administrative judge's initial decision became the Board's final decision. Ms. Vestal now petitions for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Ms. Vestal does not dispute that the agency proved its charge that she unlawfully provided taxpayer information to an unauthorized person, nor does she dispute that the agency had shown a nexus. Ms. Vestal argues only that the Board committed various errors and that the penalty of removal was too severe. We affirm the Board's decision.

## I

Our review of Board decisions is limited. *Whiteman v. Dep't of Transp.*, 688 F.3d 1336, 1340 (Fed. Cir. 2012). A final decision of the Board must be affirmed unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Potter v. Dep't of Veterans Affs.*, 949 F.3d 1376, 1379 (Fed. Cir. 2020).

We do not disturb an agency-imposed penalty merely because we might have chosen a lesser penalty had we been in charge. *Webster v. Dep't of the Army*, 911 F.2d 679, 686 (Fed. Cir. 1990) ("Whether this court would have chosen a different penalty is irrelevant."); *Graybill v. U.S. Postal Serv.*, 782 F.2d 1567, 1574 (Fed. Cir. 1986) ("In reviewing the appropriateness of an agency-imposed penalty, this Court does not sit as a final arbiter of disputes between the government and its employees. Our function is not to conduct a *de novo* review of agency disciplinary proceedings in order to determine what penalty we might have imposed. . . . [T]he agency need not demonstrate that the particular penalty which it has imposed is the least severe penalty

which can be imposed to effect the desired result." (citation omitted)); *Weston v. U.S. Dep't of Hous. & Urb. Dev.*, 724 F.2d 943, 949 (Fed. Cir. 1983) ("In reviewing the appropriateness of an agency-imposed removal, it is not the place of this court to determine what course would have been pursued were we in charge."); *see also Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1366 (Fed. Cir. 2012) ("In exercising this limited scope of review, we do not consider how we would have decided the case in the first instance, and may not merely substitute our judgment for that of the board.").

Rather, "[i]t is well established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency." *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987); *see also Guise v. Dep't of Just.*, 330 F.3d 1376, 1382 (Fed. Cir. 2003) ("The choice of penalty is committed to the sound discretion of the employing agency."); *Lachance v. Devall*, 178 F.3d 1246, 1251, 1259 (Fed. Cir. 1999) ("It is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency.").

Accordingly, the court must defer "to the agency's choice of penalty 'unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Archuleta v. Hopper*, 786 F.3d 1340, 1352 (Fed. Cir. 2015) (quoting *Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993)); *see also Allen v. U.S. Postal Serv.*, 466 F.3d 1065, 1071 (Fed. Cir. 2006); *Parker*, 819 F.2d at 1116; *Graybill*, 782 F.2d at 1574; *Weston*, 724 F.2d at 949.

This highly deferential standard of review is reflective of the "great reluctance on the part of the courts to become enmeshed in the disciplinary process," *Weston*, 724 F.2d

at 949, as "the employing (and not the reviewing) agency is in the best position to judge the impact of the employee misconduct upon the operations of the agency, the prospects for the employer's rehabilitation and improvement, and the need to maintain and encourage high standards of conduct by all employees," *Beard v. Gen. Servs. Admin.*, 801 F.2d 1318, 1321 (Fed. Cir. 1986).

## II

On appeal, Ms. Vestal argues only that the administrative judge committed various errors and that the penalty of removal is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion. We disagree.

Mr. Dubois's penalty determination was guided by the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981). We have repeatedly approved of employing these factors to determine the reasonableness of a penalty. *See, e.g.*, *Zingg v. Dep't of the Treasury*, 388 F.3d 839, 841 (Fed. Cir. 2004).

As both Mr. Dubois and the Board found, Ms. Vestal intentionally disclosed taxpayer information to an unauthorized person for her own benefit. *Decision*, 2020 MSPB LEXIS 135, at *19–20; S. App. 6. The disclosure violated the law. I.R.C. § 6103(a). Ms. Vestal was aware that she had multiple resources at her disposal—including her supervisors and the IRS Office of Disclosure Services—to discuss whether and how certain disclosures could be made, and in fact Ms. Vestal had previously consulted the Office of Disclosure Services. App. 80–81; S. App. 71–72. Yet she made this disclosure without first consulting any of these resources or otherwise obtaining permission from the agency. She also made the disclosure without first redacting any of the taxpayer information, without relying on any advice from her legal counsel when she made the disclosure, and without knowledge of any

rule or regulation permitting the disclosure without prior authorization from the agency. S. App. 32.

Ms. Vestal "knew privacy protection was important," *Decision*, 2020 MSPB LEXIS 135, at \*30–31, and she received annual trainings between 2009 and 2018 to that effect, *id.*; S. App. 6, 32. Specifically, IRS Revenue Agents such as Ms. Vestal "are trained that taxpayer privacy is 'sacrosanct' and any disclosure of taxpayer information outside of work is an 'absolute no-no.'" *Decision*, 2020 MSPB LEXIS 135, at \*32. Such unauthorized disclosures are particularly serious in this context, because the IRS "is charged with collecting the nation's revenue, most of which is paid voluntarily," and "disclosure of taxpayer information erodes taxpayer confidence when entrusting information to the agency, thereby jeopardizing the voluntary submission of revenue." *Id.* at \*29–30.[3] Furthermore, although of lesser importance to the deciding official, App. 59, Ms. Vestal had been previously suspended. *Decision*, 2020 MSPB LEXIS 135, at \*32; S. App. 6.

These findings are supported by the law and substantial evidence. Under these circumstances, the penalty of removal was not "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Archuleta*, 786 F.3d at 1352 (quoting *Brook*, 999 F.2d at 528).

### III

Ms. Vestal's primary argument on appeal is that "[t]he penalty imposed was that for willful disclosure, rather than

---

[3]    For example, a transcript of one of Ms. Vestal's trainings provides that "our work holds us to a higher standard—our actions must inspire trust and confidence in the Internal Revenue Service. That trust is a cornerstone of voluntary compliance with our nation's tax laws." S. App. 38.

negligent disclosure." Petitioner's Br. 2. Ms. Vestal relies on the IRS Internal Revenue Manual ("IRM"), which states that "[a]n unauthorized access or disclosure" can be considered "willful" only if it is made "with full knowledge that it is wrong." IRM § 11.3.1.9. Ms. Vestal contends that her unauthorized disclosure was not willful because she did not have "full knowledge that [her actions were] wrong"; rather, she contends that she incorrectly believed that attorney-client privilege protected the disclosure from being unauthorized. In Ms. Vestal's view, because her unauthorized disclosure was not willful, the deciding official incorrectly assessed three of the *Douglas* factors, namely: the nature and seriousness of the offense, the clarity with which the employee was on notice of any rules that were violated in committing the offense, and the consistency of the penalty with any applicable agency table of penalties. *See* Petitioner's Br. 5. We disagree.

Ms. Vestal's removal was properly predicated on her intention to disclose the information to her attorney and did not depend on whether she knew that the disclosure was wrong. As to the nature and seriousness of the offense and clarity of notice, the Board credited Mr. Dubois's testimony that Revenue Agents are trained that "taxpayer privacy is 'sacrosanct'" and that "any disclosure of taxpayer information outside of work is an 'absolute no-no.'" *Decision*, 2020 MSPB LEXIS 135, at *32. And the Board credited Mr. Dubois's testimony that the intentional nature of Ms. Vestal's conduct—i.e., her intentional transmission of a taxpayer's record to her attorney—was an aggravating factor even though "her disclosure of taxpayer information was not intentional in the sense that she did not intend to violate a law or policy." *Id.* at *31–32. None of these findings are unsupported by the law or substantial evidence. Whether Ms. Vestal intended to make the disclosure at all is clearly relevant to the nature and seriousness of the offense.

Of course, the IRS might have viewed this case quite differently if Ms. Vestal's disclosure were a mistake—for example, had she intended to send the information to an authorized person but mistakenly sent the information to her attorney instead.  But here, Ms. Vestal did intend to send the information to her attorney.  It was not improper to consider such intentionality as aggravating.  This court has even previously concluded that such intentionality can provide a basis for removal.  *See Zingg*, 388 F.3d at 844 (affirming the removal of an IRS employee even though the employee mistakenly believed that the disclosure of confidential taxpayer information was excused).

As to the penalty guidelines, Ms. Vestal is incorrect that "[t]he penalty imposed was that for willful disclosure under the Agency's penalty table, rather than that for disclosure due to carelessness, recklessness[,] or negligence."  Petitioner's Br. 6.  In fact, the relevant section of the IRS Manager's Guide to Penalty Determinations ("Penalty Guide") does not use the word "willful" at all.  Rather, the Penalty Guide recommends removal for even a first offense of an "*[i]ntentional* disclosure of information to unauthorized persons of tax or other personally identifiable information."  App. 37 (emphasis added).  The Penalty Guide recommends lesser penalties only for the first two offenses of "[d]isclosure due to carelessness, recklessness, or negligence."  *Id.*  Ms. Vestal improperly conflates *willful* unauthorized disclosures—which may constitute a felony, *see* I.R.C. § 7213—from disclosures, like hers, that were merely *intentional*.

Ms. Vestal also appears to argue that, for purposes of the Penalty Guide, "intentional" and "willful" are synonymous.  They are not.  The use of "intentional" in the guidelines refers to disclosures that were made on purpose even if the employee did not know that the disclosures were wrong.  If the IRS wanted to limit the guidelines to recommending removal only for first offenses of willful disclosures—i.e., disclosures that, in Ms. Vestal's view, require

knowledge of wrongdoing—the IRS would have used the word "willful" in the guidelines. It did not. Ms. Vestal provides no reason why the IRS would have used the word "intentional" in the Penalty Guide if it really meant "willful."

It would be one thing if "willful" and "intentional" were generally synonymous in the law. They are not. The Supreme Court has explained that "*even in the criminal context*, reference to a[n] . . . 'intentional' 'violation' . . . has not necessarily implied a defense for legal errors." *Jerman v. Carlisle*, 559 U.S. 573, 582–85 (2010) (citation omitted). And as compared with "intentional," the term "willful" is "more often understood in the civil context to excuse mistakes of law." *Id.* at 584; *see also id.* at 582–83 ("Our law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.").

Ms. Vestal relies heavily on the IRM in support of her argument. While we acknowledge that the IRM may appear less than clear as to the definition of "intentional," the IRM more strongly supports our conclusion than hers. Specifically, the IRM defines "[a]n unauthorized access or disclosure" as "willful when it is done voluntarily and *intentionally* with full knowledge that it is wrong." IRM § 11.3.1.9 (emphasis added). Thus, for purposes of the IRM, "willful" and "intentional" cannot mean the same thing, as "intentional" is merely one subcomponent of the definition of "willful." And the definition of a willful disclosure in the IRM also makes clear that knowledge that the disclosure is wrong is separate from the intentionality of the disclosure—otherwise the definition of willful would include a significant redundancy. Accordingly, the IRM most readily supports our interpretation of the Penalty Guide, not Ms. Vestal's.

Ms. Vestal also relies on the fact that the Penalty Guide recommends lesser penalties for "[d]isclosure[s] due

to carelessness, recklessness, or negligence." *See* App. 37.
In Ms. Vestal's view, her actions fall into this this category
because her disclosure was due to her mistaken belief that
attorney-client privilege protected the disclosure. But as
Mr. Dubois explained, and as the text plainly indicates,
this category of offense is for disclosures that the employee
never intended to make in the first place, such as where an
employee intends to fax a document with taxpayer infor-
mation to an authorized recipient but negligently faxes the
document to an unauthorized recipient. *See* S. App. 56–57.
This interpretation is also supported by the agency's pri-
vacy training, which consistently describes careless disclo-
sures as those made without any intent to disclose
information to an unauthorized person.[4] The privacy

---

[4]     S. App. 40 (providing an example of a careless dis-
closure as one where an employee, "in haste," fails to follow
shipping procedures when shipping a package containing
personally identifiable taxpayer information, and although
the package was ultimately delivered, the box was dam-
aged and appeared to be missing files); *id.* at 41 (providing
an example of a careless disclosure as one where an em-
ployee picks up groceries while leaving her laptop, which
contains personally identifiable taxpayer information, on
the passenger seat of the car, and the laptop is stolen while
the employee is getting groceries); *id.* (providing two exam-
ples of careless disclosures caused by faxing: first where
"[a] Revenue Agent was attempting to EEFax various
forms for tax years 2012–2017 to a taxpayer but after
transmitting he realized he erroneously sent them to an in-
correct fax number"; and second where a Contact Repre-
sentative sent personally identifiable taxpayer information
to an unauthorized recipient because she "grabbed several
documents from a shared printer" and transmitted all the
documents without realizing that she had grabbed docu-
ments she did not intend to send).

training also characterizes *un*intentional disclosures in the same manner. S. App. 40.[5]

Against this backdrop, it is clear that the IRS used the word "intentional" rather than "willful" in the Penalty Guide to connote that removal for a first offense is warranted even if the disclosure were not made with full knowledge that it was wrong. Accordingly, the penalty of removal is not inconsistent with the Penalty Guide.

Relatedly, Ms. Vestal argues that Mr. Dubois conceded that he might have recommended a different penalty had Ms. Vestal's disclosure been non-willful. *See* App. 58–59, 67. But Ms. Vestal misreads Mr. Dubois's testimony. With just a little context, it is clear that Mr. Dubois only admitted that, had Ms. Vestal not intended to make the disclosure to her attorney (e.g., had she mistakenly sent the documents to her attorney while intending to send the documents to an authorized recipient), he may have considered a different penalty.

For starters, Ms. Vestal's reading of Mr. Dubois's testimony is inconsistent with the fact that Mr. Dubois's removal decision was not based on Ms. Vestal having knowledge that the disclosure was wrong. *See* S. App. 6, 56–57; App. 59–61. In affirming the removal, the administrative judge specifically credited Ms. Vestal's testimony that she did not intend to violate a law or policy, but nevertheless found that "preponderant record evidence supports Dubois'[s] belief that the appellant's disclosure of taxpayer information was intentional" and that such intentionality "was an aggravating factor." *Decision*,

---

5    S. App. 40 (providing examples of unintentional errors as "[m]ailing or faxing documents to the wrong taxpayer, [e]rrors in transcript delivery to Income Verification Express Service (IVES) participants [or] [i]mproperly sharing or disclosing sensitive data by telephone or email").

2020 MSPB LEXIS 135, at \*32. As the administrative judge explained, Mr. Dubois's removal determination was founded upon Ms. Vestal's intention to disclose the information to her attorney, not on whether she knew that the disclosure was wrong. *See id.* at \*31–32.

In the removal letter, Mr. Dubois described the misconduct as the *intentional* disclosure of taxpayer information. S. App. 6. Turning to the hearing, Mr. Dubois explained that Ms. Vestal's misconduct was *intentional* because Ms. Vestal purposely shared the information with her attorney. S. App. 56–57. Mr. Dubois contrasted Ms. Vestal's case with one where someone faxes something incorrectly and thus did not intend to make the disclosure at all. S. App. 56–57. Mr. Dubois conceded that he did not know whether Ms. Vestal knew the disclosure was wrong when she made it. App. 59–60. But Mr. Dubois proposed removal nonetheless, stressing that there were only two possibilities: either Ms. Vestal was ignorant of the law or she knew her disclosure was unlawful, and either way the disclosure was "very serious and troubling." App. 60. Nowhere did Mr. Dubois indicate that his removal determination was based in any part on Ms. Vestal's knowledge that her disclosure was wrong. In context, it is thus clear that the admissions relied upon by Ms. Vestal refer to an admission by Mr. Dubois that he probably would have chosen a lesser penalty had Ms. Vestal not intended to make the disclosure.

It is true that Mr. Dubois responded "[m]ost likely" to Ms. Vestal's attorney's question, "[i]f Ms. Vestal's disclosure had been *non-willful*, you would have recommended a different penalty, correct?" App. 58 (emphasis added). But it is clear from his testimony that he understood the use of willful during the hearing as synonymous with

intentional.[6] App. 58. For example, Mr. Dubois's explanation for his response was that the Penalty Guide does not recommend removal for a first offense if the offense is non-willful. App. 58. But as previously indicated, the Penalty Guide does not use the term "willful" at all but rather recommends removal for a first offense of "[i]ntentional disclosure" and lesser penalties for a first offense of "[d]isclosure due to carelessness, recklessness, or negligence." App. 37. Given this context, and given that Mr. Dubois's penalty determination was not based on Ms. Vestal's knowledge of wrongdoing, it is clear that Mr. Dubois indicated at the hearing only that he would have considered a different penalty had Ms. Vestal not intended to disclose the information to her attorney. *See also* App. 60 (Mr. Dubois using "willful" in the context of intending the disclosure, not in the context of knowing whether the disclosure was unlawful).

Ms. Vestal also points to Mr. Dubois's testimony indicating that he did not believe that Ms. Vestal actually thought attorney-client privilege protected the disclosure. App. 65–67. But right afterward, Mr. Dubois clarified that his removal decision was based upon her intent to disclose the information to her attorney and "the sacrosanct nature

---

[6] Indeed, Ms. Vestal, the administrative judge, and even the government have all improperly conflated "willful" and "intentional" at various points during these proceedings, so it should come as no surprise that Mr. Dubois fell prey to such conflation as well. Further, the concept of a "willful" disclosure appears to have been introduced by Ms. Vestal's counsel during the questioning of Mr. Dubois at the December 12, 2019 administrative judge hearing. App. 58. As noted *supra*, in the removal letter, Mr. Dubois did not describe Ms. Vestal's misconduct as a *willful* disclosure of taxpayer information but as an *intentional* disclosure.

of the actual offense," not on her knowledge that the disclosure was wrong. App. 66–67. And again, the remainder of Mr. Dubois's testimony makes clear that he recommended removal because Ms. Vestal intended the disclosure, not based upon whether Ms. Vestal knew the disclosure was unauthorized when she made it. Overall, Mr. Dubois's testimony aligns with the initial statement he made in the removal letter—that Ms. Vestal "intentionally disclosed taxpayer information to [her] individual attorney for personal use," S. App. 6—an offense warranting removal according to the Penalty Guide. Ms. Vestal also argues that the Board erred in considering Ms. Vestal's prior discipline as an aggravating factor because Mr. Dubois "testified that he did not consider her prior discipline to be significant in determining the penalty." Petitioner's Br. 16 (citing App. 59). But Mr. Dubois merely testified that he did not consider Ms. Vestal's discipline to be a *significant* factor in determining the penalty, not that her prior discipline was irrelevant or not aggravating. App. 59. Mr. Dubois's removal letter specifically lists Ms. Vestal's prior disciplinary record as aggravating. S. App. 5–6.

Ms. Vestal also contends that the administrative judge "incorrectly stated that Mr. Dubois considered [Ms. Vestal's] length of service as a mitigating factor." Petitioner's Br. 18–19. Ms. Vestal reasons that Mr. Dubois's testimony was inconsistent on that score and that the administrative judge erred in refusing to let counsel "read the deposition testimony into the record and question the witness about" the inconsistency. Petitioner's Br. 18–19. We disagree. As the administrative judge found, Mr. Dubois acknowledged the alleged ambiguity and adequately explained it. Specifically, he explained that he considered Ms. Vestal's ten years of service as a mitigating factor but her ten years of training on taxpayer privacy as aggravating. App. 72–75; *see also* S. App. 5–9.

CONCLUSION

We have considered Ms. Vestal's remaining arguments but find them unpersuasive. For the foregoing reasons, the Board's decision is supported by substantial evidence, is in accordance with the law, and did not amount to an abuse of discretion. The penalty of removal under these circumstances was not "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Archuleta*, 786 F.3d at 1352 (quoting *Brook*, 999 F.2d at 528).

**AFFIRMED**