NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHARLES HAGG,**
*Petitioner*

**v.**

**FEDERAL BUREAU OF PRISONS,**
*Respondent*

---

2023-1071

---

Petition for review of an arbitrator's decision in No. FMCS 210914-09961 by Ira Lobel.

---

Decided:  August 16, 2024

---

JOHN-ED LONG BISHOP, Whitehead Law Firm, Baton Rouge, LA, argued for petitioner.  Also represented by JACK K. WHITEHEAD, JR.

EBONIE I. BRANCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY, JANA MOSES.

---

Before CHEN, LINN, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Charles Hagg, a former employee of the Federal Bureau of Prisons ("BOP" or the "Agency"), was arrested for driving under the influence of alcohol ("DUI"). He provided a blood sample revealing a high blood alcohol content level and a positive result for tetrahydrocannabinol ("THC"), a compound found in marijuana. Mr. Hagg eventually pled guilty to the DUI charge. He denied using marijuana and was not charged with drug use. After Mr. Hagg informed his supervisors at BOP of the arrest, they directed him to submit a urine sample, which tested positive for THC. Based on the criminal charges against him and the positive urine test, Mr. Hagg's BOP supervisor decided to remove him from his position with the Agency.

Mr. Hagg appealed to an arbitrator, who found the removal was a proportional response to Mr. Hagg's conduct. He now appeals to us, raising multiple issues relating to, among other things, the urinalysis and the reasonableness of his removal. We agree with Mr. Hagg that the arbitrator relied on clearly erroneous factual findings and on evidence he obtained through personal research. We resolve certain other issues and leave still others for the arbitrator to consider on remand. We vacate the arbitrator's decision and remand for a new hearing.

I

Mr. Hagg was a Correctional Officer, GL-7, at Federal Correctional Institution ("FCI") McKean, which is part of BOP and located in Pennsylvania. He was hired on March 17, 2019. From that date until the incidents leading to his dismissal, he had no disciplinary measures in his record. Bradley Trate, Warden at FCI McKean ("Warden" or "Warden Trate"), was aware of prior drug use by Mr. Hagg when he was hired, and provided a waiver to allow Mr. Hagg to work at the facility.

In early February 2021, Mr. Hagg suffered a loss in his family. Then, on the evening of February 6, 2021, Mr. Hagg went to a nightclub and drank a substantial amount of alcohol. In the early morning hours of February 7, Mr. Hagg crashed his car into a ditch and was taken into custody by police. He was administered a blood test, the results of which indicated a Blood Alcohol Content level of .158%, above the legal limit for driving, as well as the presence of THC. When questioned, Mr. Hagg denied having smoked marijuana and speculated that the only way he could have been exposed to marijuana was through his use of a "Vape Pen" he borrowed from a "stripper" at the nightclub. Mr. Hagg had assumed the vape pen only contained nicotine but acknowledged that he did not know. Mr. Hagg later pled guilty to one count of DUI, his first and only criminal offense.

Almost immediately after his arrest, Mr. Hagg informed his supervisors at FCI McKean, Lieutenant Christopher Crout and Captain Matthew Avery, of the DUI charge and positive THC blood test result. On March 3, 2021, the BOP conducted its own drug test on Mr. Hagg, using urinalysis. The Agency asserts that it had reasonable suspicion to conduct this test, although it admits it did not document the basis for its reasonable suspicion until after the test had been performed. The urine test returned a positive result for the presence of marijuana. Although Mr. Hagg continued to deny having used marijuana at or around the time he went to the nightclub, he admitted that when he had administered several at-home drug tests to himself they all had returned positive results as well.

On July 7, 2021, Warden Trate proposed to remove Mr. Hagg based on two alleged disciplinary violations. One was "off duty misconduct;" that is, the "actions of operating a motor vehicle while under the influence of alcohol." J.A. 91-92. The second was providing the urine sample that tested positive for an illegal substance. At a meeting with Warden Trate and Amelia McDonald, FCI McKean's

Acting Human Resources Manager, Mr. Hagg responded to the disciplinary charges. He also provided a letter of apology, which noted he was participating in the Agency's Employee Assistance Program ("EAP") and was receiving counseling.

The Warden issued a removal decision on August 16, 2021. The decision noted that Mr. Hagg did "not have any prior discipline within the reckoning period" and that his job "performance has been at an acceptable level." J.A. 99. However, it continued, the "incidents of misconduct have negatively impacted your ability to perform at a satisfactory level and have caused your supervisors to lose confidence in your ability to perform assigned duties." *Id.* Without mentioning the *Douglas* factors, set out in *Douglas vs. Veterans Admin.*, 5 M.S.P.R. 280 (M.S.P.B. 1981), by name, the letter addressed them in the course of explaining Warden Trate's decision to remove Mr. Hagg from his position.

Mr. Hagg appealed the decision to an arbitrator, an opportunity provided for by the collective bargaining agreement between BOP and Mr. Hagg's union. On March 16 and 17, 2022, the arbitrator held a remote video hearing. The arbitrator issued his decision, upholding BOP's removal of Mr. Hagg, on September 12, 2022.

In his decision, the arbitrator repeatedly stated that Mr. Hagg had "admitted" to using marijuana. J.A. 4 ("Mr. Hagg admitted to both the intoxication and the use of marijuana."); J.A. 11 ("Mr. Hagg admitted to using marijuana on or about that date."); *id.* ("Given Mr. Hagg's admissions, it is difficult to understand the necessity of having the doctor [who administered the urine test] testify."). He found Mr. Hagg's story about inadvertent exposure to marijuana by using another person's vape pen to be not credible. The arbitrator also determined that Mr. Hagg had raised no persuasive reason for questioning the accuracy of the police-administered blood test. J.A. 10. The arbitrator then

relied on his "personal research" about "weed" to find that there is "no way" the results of the March 3 urinalysis could in any way be linked to the February 7 blood test, because, the arbitrator insisted, a single use of marijuana can only be detected in urine for three days. J.A. 10 n.1. Therefore, in the arbitrator's view, Mr. Hagg must have used marijuana at least twice within a month.

Turning to Mr. Hagg's challenge to the Agency's decision to administer the urinalysis, the arbitrator held that "[g]iven the events of February 6/7 and the discussion [Mr. Hagg] had with the Warden when he was hired," there was reasonable suspicion justifying the test. J.A. 11. Mr. Hagg's attorney had objected at the hearing to the Agency's failure to produce for examination the doctor who had performed the March 3 test. On this point, the arbitrator explained: "Given Mr. Hagg's admissions" that he had used marijuana, and the testimony of the individual who had collected the urine samples (but was not involved with the testing), "there should be little concern about the reliability of the urine tests." *Id.* In the arbitrator's view, "there is little doubt Mr. Hagg was guilty of the [disciplinary] charges." *Id.*

Addressing whether removal was an appropriate penalty, the arbitrator prefaced his analysis by stating "an arbitrator should give the Bureau some, but not total, deference" and "should look at the facts and determine whether the proposed penalty is consistent with the charges." *Id.* He listed the *Douglas* factors but did not expressly reference them in his subsequent analysis. He determined that Warden Trate, "[w]hile not applying the Douglas [factors] in a direct manner, . . . used the principles set forth by Douglas to reach his conclusion." J.A. 16.

The arbitrator then expressed some confusion as to the penalty for drug use by BOP employees and whether the Agency had a zero-tolerance policy. He explained "it does not appear that termination is automatic, as suggested by

the Warden," seemingly rejecting the Warden's testimony suggesting that he had applied a zero-tolerance policy with respect to employee drug use. J.A. 16. In any event, the arbitrator's conclusion was that removal was "appropriate for one with limited seniority and who was hired with the understanding that his prior drug use could not occur again." J.A. 17. In determining that "termination is the only appropriate conclusion," the arbitrator expressly relied on the short duration of Mr. Hagg's employment, the DUI conviction, and the "two incidents of marijuana use within a month." J.A. 18.

Mr. Hagg timely appealed the arbitrator's order to this Court.[1]

II

"[J]udicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f); *see also Cornelius v. Nutt*, 472 U.S. 648, 652 (1985) ("If the employee elects so to proceed, and the union or the agency invokes binding arbitration, the arbitrator is to apply the same substantive standards that the Board would apply if the matter had been appealed.") (internal citation omitted). Pursuant to 5 U.S.C. § 7703(c), we must affirm an arbitrator's (or Board's) decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." An abuse of discretion may be found "when the [arbitrator's] decision is based on an erroneous

---

[1]    The arbitrator had jurisdiction pursuant to a negotiated agreement between BOP and Mr. Hagg's union. *See* 5 U.S.C. § 7121(e)(1)-(2). We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A); *see also* 5 U.S.C. § 7121(f).

interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1083 (Fed. Cir. 2018). "We review the [arbitrator]'s legal determinations, including its interpretation of a statute, de novo . . . [and] the [arbitrator]'s findings of fact for substantial evidence." *Archuleta v. Hopper*, 786 F.3d 1340, 1346 (Fed. Cir. 2015) (internal citation omitted).

"This court defers to the agency's choice of penalty unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Id.* at 1352 (internal quotation marks omitted). While "[t]he agency need not demonstrate that the particular penalty which it has imposed is the least severe penalty which can be imposed to effect the desired result," *Vestal v. Dep't of Treasury*, 1 F.4th 1049, 1053 (Fed. Cir. 2021), the agency must prove "not only that the misconduct actually occurred, but also that the penalty assessed was reasonable in relation to it," *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 5 (2001).

## III

On appeal, Mr. Hagg presents a multitude of challenges to the arbitrator's judgment. We begin our analysis with those issues on which we agree with Mr. Hagg: (i) the arbitrator abused his discretion by relying on a clearly erroneous finding that Mr. Hagg "admitted" to marijuana use; and (ii) the arbitrator abused his discretion by relying on his own non-record "personal research" to find that Mr. Hagg used marijuana repeatedly. After addressing these issues, we turn to those on which we disagree with Mr. Hagg. Like the arbitrator, we conclude that reliance on the police-administered blood test results was acceptable and that the BOP-administered urinalysis was justified by

reasonable suspicion. Finally, we discuss our decision not to reach other issues raised by Mr. Hagg, including the alleged insufficiency of the *Douglas* analysis, purported discovery violations by the Agency, possible procedural irregularities at the hearing, and whether the Warden based his decision on matters not presented in the proposal to remove Mr. Hagg.

A

We first address the issues Mr. Hagg pressed on appeal on which we agree with him. These errors alone are sufficient to require us to vacate the arbitrator's decision affirming BOP's removal of Mr. Hagg and to remand for the arbitrator to conduct a new hearing.

1

We agree that the arbitrator clearly erred in finding that Mr. Hagg "admitted" to using marijuana. The record is devoid of substantial evidence to support this finding.

In multiple places in his decision, the arbitrator referred to Mr. Hagg as "admitting" to using drugs. Each of the following statements appears in the decision: (i) "On June 9, Mr. Hagg *admitted* to both the intoxication and the use of marijuana," J.A. 4 (emphasis added); (ii) "Mr. Hagg *admitted* to using marijuana on or about that date [i.e., February 6/7]," J.A. 11 (emphasis added); and (iii) "Given Mr. Hagg's admissions, it is difficult to understand the necessity of having the doctor [who performed the test for marijuana] testify," *id.* There is simply no evidence in the record supporting this finding. Elsewhere, even the arbitrator appears to recognize this reality, as he notes, confusingly, that Mr. Hagg "asserted he did *not* use any marijuana." J.A. 10 (emphasis added); *see also* J.A. 6 (arbitrator observing that Mr. Hagg "questioned how this" positive drug test "could have happened"). The arbitrator never acknowledges this inconsistency in his analysis.

The origin of the arbitrator's mistake may lie in Mr. Hagg's story about having used a vape pen that Mr. Hagg speculated could have contained a substance other than nicotine. Or perhaps it arose from a misunderstanding of Mr. Hagg's admission that his drug tests yielded positive results. Indeed, the only record citation the arbitrator provides for Mr. Hagg's supposed admission to marijuana use is Mr. Hagg's affidavit, which admits to the positive test results but *denies* actual use. *See* J.A. 79 ("I became aware that the Blood test yielded a Positive testing for a Marijuana"); *id.* ("I am aware that the BOP drug test came back with a positive yielding for Marijuana."); *id.* ("I have not knowing[ly] smoked/ingested marijuana on February 6, 2021, nor have I used any controlled substance during my employment with [BOP]."). The only drug-related conduct Mr. Hagg admitted to in connection with the February and March events was testing positive – in the blood test, the urinalysis, and the self-administered home tests – and using the stripper's vape pen, which theoretically could have contained marijuana. J.A. 78-79; *see also* J.A. 10 (arbitrator stating that "even if [the assertion about the vape pen is] believed, it does not diminish the significance of the DUI conviction").

The arbitrator's clearly erroneous finding plainly prejudiced Mr. Hagg. The arbitrator's repeated citation to the "fact" of Mr. Hagg's admission to marijuana use makes clear that this purported reality impacted the decision to affirm the Agency. Hence, the arbitrator's mistake with respect to the non-existent admission constitutes an abuse of discretion that can only be remedied by vacating his decision and remanding for further proceedings.

On remand, after a new hearing, the arbitrator may find from the evidence as a whole that Mr. Hagg did actually smoke marijuana, in or around February 6/7 and possibly again nearer to the March 3 blood test. After all, Mr. Hagg admitted to "smoking out" the vape pen, which could have contained marijuana, J.A. 78; stated that he had a

hangover after the nightclub that felt unlike what he experiences when he ingests only alcohol; provided positive drug tests to the police and the Agency; and received positive results from self-administered home drug tests throughout February. We leave it to the arbitrator to weigh all the evidence of record – but only the evidence of record, untainted by a clearly erroneous finding of an admission of drug use by Mr. Hagg – and make a factual finding on remand.

2

The arbitrator's finding that Mr. Hagg used marijuana on *multiple* occasions between February 6 and March 3 is also not supported by substantial evidence. While the record contains circumstantial evidence from which the arbitrator may, on remand and after another hearing, find that Mr. Hagg used marijuana on one or more occasions in the pertinent period, the arbitrator's existing finding on this point improperly rests on his non-record "personal research."

In his decision, the arbitrator found as a fact that any "weed" detected in Mr. Hagg's February 6/7 test would not have stayed in his body long enough to be detected in the March 3 test. J.A. 10. The only basis for this finding, however, is what the arbitrator expressly acknowledged was his own "[r]esearch on the internet." J.A. 10 n.1. The arbitrator could not have been clearer about the supposed evidence for his conclusion, writing: "*Based on personal research*, there is no way the results of the March 3 test could in any way be linked to the February 6/7 test." J.A. 10 (emphasis added).

The arbitrator erred in conducting his own independent research and relying on it to make material findings on which his decisions clearly rest. *See Cruz v. Dep't of the Navy*, 934 F.2d 1240, 1245 n.6 (Fed. Cir. 1991) (refusing to consider evidence that was not presented by parties to factfinder); *Kyhn v. Shinseki*, 716 F.3d 572, 575-76 (Fed. Cir.

2013) (same); *see also Mott v. Dep't of Veterans Affs.*, 723 F. App'x 979, 984 (Fed. Cir. 2018) (finding Board "improperly relied on extra-record evidence"). Neither party had notice of the materials the arbitrator found on the internet, and neither party had the opportunity to contest or contextualize them. Yet there is no doubt the arbitrator relied on this non-record evidence to reach his determinations. *See, e.g.*, J.A. 18 ("Given Mr. Hagg's short length of service, the DUI, and two incidents of marijuana use within a month, termination is the only appropriate conclusion."). Indeed, there appears to have been no reason that the arbitrator would have strayed outside the record by conducting his own research unless he was doing it to obtain information to help him reach his decision. This is not appropriate – and the Agency does not argue otherwise.[2] Instead, the Agency concedes that if we find, as we have, that the arbitrator relied on the results of his own personal research, we must vacate and remand.[3] We do so.

B

Mr. Hagg raises other issues on which we do not agree with him. We turn to these now.

---

[2] *See* Oral Arg. at 27:25-28:05 (THE COURT: "Is it ok for the MSPB or an arbitrator to do independent scientific research and then rely on that in the final decision . . . do you think that's ok?" COUNSEL: "Well, I cannot say that if placed in the same circumstances I would have done that.").

[3] *See* Oral Arg. at 29:23-38 ("THE COURT: "If we as a panel find that there was something improper about the arbitrator doing this outside research and if we think that that factored into the decision, doesn't that mean that we have to at least vacate and remand this case?" COUNSEL: "Yes, Your Honor.").

1

Mr. Hagg contends that the Warden and arbitrator should not have relied on the police-administered blood test as part of their decision that Mr. Hagg committed the disciplinary violations with which he was charged, or in determining that his removal was an appropriate sanction. He also suggests that, even on remand, the arbitrator should not be permitted to rely on the results of the blood test. We disagree.

The arbitrator concluded that both the blood test and the urine test[4] were sufficiently reliable indicators of Mr. Hagg's drug use to be proper bases for his decision. With respect to the blood test in particular, the arbitrator said that given it was performed by police, an "independent third party," Mr. Hagg had "no justification for questioning its accuracy." J.A. 10. While Mr. Hagg has a right to question the accuracy of a police-administered drug test – and may do so again at the new hearing – the arbitrator is the factfinder, and in that capacity it is his obligation to consider the totality of the evidence, make credibility assessments, and decide which evidence he believes, which here may include finding the blood test to be reliable. *See generally Hathaway v. Merit Sys. Prot. Bd.*, 981 F.2d 1237, 1241 (Fed. Cir. 1992) ("A fact finder is not obliged to accept or reject a witness' testimony *in toto*, but should rather evaluate the testimony in light of other evidence to

---

[4]    At multiple points in his decision, the arbitrator mistakenly referred to the two tests as both being urinalyses. This error is harmless – it had no impact on the arbitrator's reasoning (he found the test to be reliable because it was performed by an independent third party, not because of the type of test) – and will not be repeated on remand in connection with the new hearing.

determine whether and how much of the witness' testimony is credible.").

Mr. Hagg's attacks on the arbitrator's reliance on the urinalysis largely center on the deprivation of his opportunity to review underlying test documents and to cross-examine anyone involved with administering this test. The arbitrator considered these attacks on the quality of the urinalysis evidence and said he would "accept it [i.e., the evidence] for whatever weight [he] put on it." J.A. 532. In his decision, he explained that "given the testimony of Trisha Wright, a registered nurse/nurse practitioner, there should be little concern about the reliability of the urine tests." J.A. 11. The arbitrator was free to reach this conclusion and he may do so again, after considering the fuller record that will be developed on remand. However, the testimony of Ms. Wright only bears on the chain of custody of the sample, and the arbitrator should further consider Mr. Hagg's objections to the evidentiary foundation of the test results.

As we have observed previously, while arbitrator proceedings are not governed by the Federal Rules of Evidence, application of these rules may yield fairer and more accurate results. *See, e.g.*, *Yanopoulos v. Dep't of Navy*, 796 F.2d 468, 471 (Fed. Cir. 1986); *Reilly v. Off. of Pers. Mgmt.*, 571 F.3d 1372, 1381 (Fed. Cir. 2009); *Young v. Dep't of Hous. & Urb. Dev.*, 706 F.3d 1372, 1379 (Fed. Cir. 2013) (describing Federal Rules of Evidence as "helpful guide to proper hearing practices"). On remand, Mr. Hagg may renew his attacks on the reliability and admissibility of the blood test and urine test, and he may again argue that the Agency must produce at the hearing a witness involved in conducting the urinalysis.[5] He may also argue that the

---

[5]    We understand that the documents Mr. Hagg sought were eventually produced to him, although possibly

arbitrator should give less weight to evidence that would not have been admissible under the Federal Rules of Evidence. However, to the extent Mr. Hagg is asking us to preclude the arbitrator from placing any weight on the blood test or urine test, we are not persuaded that such a result would be correct.

2

Mr. Hagg next argues that BOP lacked the reasonable suspicion necessary to warrant subjecting him to urinalysis on March 3 and that the Agency failed to contemporaneously record the basis for its reasonable suspicion. While Mr. Hagg is correct about BOP's documentation failure, the record demonstrates that the Agency did, in fact, have reasonable suspicion. Thus, we will not order the arbitrator to strike the urinalysis results from the record.

Generally, an agency is required to demonstrate reasonable suspicion before directing an employee to submit to a urine test, which is treated as a search or seizure under the Fourth Amendment. *See, e.g., Skinner v. Ry. Lab. Execs.' Ass'n,* 489 U.S. 602, 617 (1989). We agree with the arbitrator that at least because of "the events of February 6/7," BOP "had justification to order a random test based on a 'reasonable suspicion' of drug use." J.A. 11. By the time Mr. Hagg was ordered to submit to urinalysis, Mr. Hagg had informed his supervisors of his DUI arrest and positive THC blood test. While it is true, as the Agency concedes, that the Warden failed to comply with BOP's internal procedural requirement to document, contemporaneously, the basis for reasonable suspicion, Mr. Hagg has

---

too late to have been effectively used at the earlier hearing. *See* Oral Arg. at 13:22-14:12 (THE COURT: "It appears that you did have the litigation packet, perhaps very, very tardy . . . ." COUNSEL: " . . . Being denied to have [the litigation packet] ahead of time created the issue.")

failed to show he was prejudiced by this failing, given that there was plainly reasonable suspicion for the drug test. *See generally Garrison v. Dep't of Just.*, 72 F.3d 1566, 1568 (Fed. Cir. 1995) ("[T]he determination whether [the deciding officer] had 'reasonable suspicion' that [the employee] had used drugs was to be made on the basis of the factual information [the officer] had when he made the determination.").[6]  This Agency error, thus, was harmless.  *See Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1281 (Fed. Cir. 2011) ("We have repeatedly held employees to this burden to show harmful error in an agency's procedure in order to establish reversible procedural error."); *Handy v. U.S. Postal Serv.*, 754 F.2d 335, 337-38 (Fed. Cir. 1985) ("It is insufficient simply to show that a statutory procedure was not followed at the agency level.  Harmful error must be shown.").  Accordingly, again, we will not order the arbitrator to strike the urinalysis evidence from the record on remand.

C

Finally, Mr. Hagg raises several issues that we need not resolve.  These matters are either no longer pertinent in light of our other findings, are moot, or are issues that will need to be reevaluated by the arbitrator in connection with the new hearing on remand.

---

[6]   Mr. Hagg's contention that his due process rights were violated is based on the purported lack of reasonable suspicion for the drug test.  *See, e.g.*, Opening Br. at 1.  As we have rejected the reasonable suspicion challenge, we necessarily also deny the due process claim.

1

We begin with the *Douglas* factors.[7]  Mr. Hagg contends that the BOP failed to adequately consider and apply the *Douglas* factors because, instead, Warden Trate decided dismissal was appropriate based solely on a zero-tolerance policy for employee drug use.  He further argues that the arbitrator erred by only considering some but not all of the *Douglas* factors and by improperly according deference to the Agency's non-existent *Douglas* factors analysis.  We do not decide if Mr. Hagg is right on either of these points because, on remand, it will be for the arbitrator, based on a new and likely expanded record, to undertake the appropriate *Douglas* analysis.

Doing so will require the arbitrator to carry out at least two tasks.  One is that the arbitrator will have to review every relevant *Douglas* factor that is addressed by the parties.  *See Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009) (requiring that agency "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas*"); *see also Williams v. Fed. Bureau of Prisons*, 72 F.4th 1281, 1285 (Fed. Cir. 2023) (instructing arbitrator to consider, as part of *Douglas* analysis, all pertinent facts, even if they are contrary to deciding official's findings).  In his decision, the arbitrator mentions some of the *Douglas* factors, but not all of them.  *See* J.A. 12-16.  On remand, the arbitrator must take care to assess any *Douglas* factor about which the parties make an argument or present evidence.

The arbitrator's other *Douglas*-related responsibility on remand is to determine the standard of review to apply to whatever analysis he finds the Agency conducted.  If the

---

[7]    The twelve *Douglas* factors, which are well-known to the parties, are recited in the arbitrator's decision.  *See* J.A. 12-13.

arbitrator concludes that the Agency engaged in a full *Douglas* analysis – as may be suggested by the letter of removal, which devotes two pages to addressing the *Douglas* factors, J.A. 99-100; as Warden Trate at times testified he did, *see* J.A. 132-35; and as the arbitrator essentially found (but in a ruling marred by clearly erroneous findings) in connection with the first hearing, *see* J.A. 16 ("While not applying the Douglas [factors] in a direct manner, it is clear the Warden used the principles set forth by Douglas to reach his conclusion.") – then his review should be deferential. *See, e.g.*, *Archuleta*, 786 F.3d at 1346 ("This court defers to the agency's choice of penalty unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.") (internal quotation marks omitted). If, instead, the arbitrator determines that the Agency did not engage in a *Douglas* analysis – since, in some places, Warden Trate testified he relied on the Agency's zero-tolerance policy, *see, e.g.*, J.A. 291 ("He tested positive for THC. He was removed from his position because I have zero confidence in his ability in public trust and supervise federal offenders. That is our national policy. That is the rules and regulations."); J.A. 303 ("You should be removed [from] your position of public trust if you're utilizing a substance that's illegal."), and also the HR officer testified that the common practice is simply to recommend the maximum punishment, J.A. 433 – then the Board's practice entails conducting an independent *Douglas* analysis. *See Wiley v. U.S. Postal Serv.*, 102 M.S.P.R. 535, 542-43 (M.S.P.B. 2006) (holding that where agency has applied zero tolerance policy, its "penalty determination is not entitled to our deference, and we must independently weigh the relevant *Douglas* factors to evaluate the reasonableness of the penalty"), *aff'd*, 218 F. App'x 1001 (Fed. Cir. 2007); *Omites v. U.S. Postal Serv.*, 87 M.S.P.R. 223, 228 (M.S.P.B. 2000) ("The agency's position that removal is the proper penalty for any violation of its

zero tolerance policy, without real consideration by [the] deciding official . . . of the relevant mitigating factors and the particular circumstances of this case, is contrary to *Douglas*."); *see also Vidal v. U.S. Postal Serv.*, 143 F.3d 1475, 1480 (Fed. Cir. 1998) (explaining that the Board is bound by its own precedent).

We leave these matters to the arbitrator to evaluate on remand.

2

Mr. Hagg alleges the arbitrator tolerated a plethora of procedural violations in connection with the proceedings before him. These include failing to require the government to produce the "litigation packet" in a timely manner in advance of the hearing, failing to require the government to produce the Medical Review Officer who performed Mr. Hagg's urinalysis to testify at the hearing, and relying on matters outside the scope of the notice and proposal letter. Because it is undisputed that Mr. Hagg now has the discovery he requested, *see* Oral Arg. at 13:22-14:12, and a new hearing will be scheduled, any error that might have occurred by not providing Mr. Hagg's counsel sufficient time or information to be prepared for the arbitrator hearing is now moot. Likewise, the parties' disagreement as to whether certain witnesses needed to be produced at the first hearing is moot; on remand the arbitrator should endeavor to identify and resolve, in a timely manner, any disputes over which witnesses will be required to appear at the remand hearing. As for Mr. Hagg's contentions that he lacked adequate notice of certain matters outside the scope of the proposal letter but on which the arbitrator ultimately relied (e.g., his prior drug use), we take this opportunity to remind the arbitrator that he may only reach – and approve discipline for – issues that are expressly identified in the proposal letter. *See* 5 C.F.R. § 752.404(b)(1) (proposal letter must contain "specific reason(s) for the proposed action"); *see also Ward*, 634 F.3d at 1281 ("[I]t is a

procedural error, in violation of 5 C.F.R. § 752.404(f), for an agency to rely on matters affecting the penalty it imposes without including those matters in the proposal notice.") (internal quotation marks omitted). We have no reason to believe that the arbitrator will fail to comply with this requirement in connection with the hearing on remand.

Finally, any history of drug use that occurred before Mr. Hagg's hiring date falls outside the two-year "reckoning period" stipulated to by the parties. On remand, the arbitrator should not consider evidence of such use.

IV

The arbitrator committed prejudicial error in finding, without substantial record evidence, that Mr. Hagg admitted to marijuana use and that he used marijuana at least twice during a one-month period. Accordingly, we vacate the arbitrator's affirmance of the BOP's removal of Mr. Hagg from his employment at FCI McKean and remand for further proceedings consistent with this opinion, including a new hearing before the arbitrator.

**VACATED AND REMANDED**

COSTS

Costs are awarded against the government.